HOGAN LOVELLS US LLP
David Perlson (Bar No. 209502)
david.perlson@hoganlovells.com
Antonio Sistos (Bar No. 238847)
ton.sistos@hoganlovells.com
Gurtej Singh (Bar No. 286547)
tej.singh@hoganlovells.com
Isabella Bosetti (Bar No. 358767)
isabella.bosetti@hoganlovells.com
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2300

*Attorneys for Plaintiff Google LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>VALTRUS INNOVATIONS LTD. and<br>KEY PATENT INNOVATIONS LTD.,<br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 8,379,538; 7,251,588; 8,370,416; 7,640,332; 7,904,686; 7,730,218; 7,936,738; 7,376,953 AND 6,889,244**<br><br>**DEMAND FOR JURY TRIAL** |

HOGAN
LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.      Plaintiff Google LLC ("Google") seeks a declaratory judgment of non-infringement of United States Patent Nos. 8,379,538 ("the '538 patent"), 7,251,588 ("the '588 patent"), 8,370,416 ("the '416 patent"), 7,640,332 ("the '332 patent"), 7,904,686 ("the '686 patent"), 7,730,218 ("the '218 patent"), 7,936,738 ("the '738 patent"), 7,376,953 ("the '953 patent"), and 6,889,244 ("the '244 patent") (together, the "Patents-in-Suit") as follows:

## NATURE OF THE ACTION

2.      This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code. Google requests this relief because defendants Valtrus Innovations Ltd. ("Valtrus") and Key Patent Innovations Ltd. ("KPI") (together, "Defendants") accuse Google's customers of infringing the '538, '588, '416, '332, '686, '218, '738, '953, and '244 patents, including through their use of Kubernetes, Apache Hadoop, and Apache Kafka open source software ("OSS"). Google offers managed services for each of the three OSS that Valtrus has accused.

3.      There is a real, immediate, and substantial controversy between Google and Defendants.

4.      Valtrus represents that it is "successor in interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor companies, including Compaq, Verity, and Hewlett-Packard Development Company" ("the HPE Patent Portfolio").[1] Valtrus's business centers on licensing the acquired HPE Patent Portfolio. Valtrus and KPI have filed lawsuits against 20 established companies with respect to the HPE Patent Portfolio.

**A.      Defendants' Communications With Google Customers**

5.      Valtrus has sent letters to Google customers accusing them of infringing several patents in the HPE Patent Portfolio including the Patents-in-Suit through all offerings using Kubernetes, Apache

---

[1] *Valtrus Innovations Ltd. v. Google LLC*, No. 5:25-cv-07179-PCP, Dkt. 1, ¶ 1 (N.D. Cal. Aug. 20, 2025).

COMPLAINT FOR DECLARATORY JUDGMENT

Hadoop, and Apache Kafka. Valtrus further pointed to Google customers' use of Google products as allegedly infringing the Patents-in-Suit.

6. As it concerns the Patents-in-Suit specifically, among these communications to Google customers, Valtrus sent letters accusing Google customers of infringing all nine of the Patents-in-Suit. Some of these letters attached presentations with claim charts for the '538, '416, '218, and '953 patents. These presentations assert that the recipients use Google Cloud. The presentations include descriptions of Google customers' employee roles involving use of Google products. And the presentations contain repeated references to Google Cloud.

7. For example, in presentations for a Google customer, Valtrus notes that the '538, '588, '416, and '332 patents are related to Kubernetes and the customer uses Kubernetes through its use of Google's managed services for Kubernetes.

**B.    Defendants' Communications With Google**

8. Valtrus has also directed communications to Google accusing it of infringing numerous patents from the same patent portfolio as the nine Patents-in-Suit.

9. For example, Valtrus directed communications to Google in Northern California four years ago. On or about April 14, 2021, the Managing Director of both Valtrus and KPI sent a letter to Google's Mountain View, California, headquarters, asserting Google products and services infringe at least fourteen patents in the HPE Patent Portfolio. The letter stated Valtrus sought "to allow Google to continue its use of these patents through a license from Valtrus." The letter sought a meeting to discuss licensing terms. The letter identified the sender's email address as "[first_name]@keypatentinnovations.ie" and title as Managing Director of Valtrus.

10. On April 28, 2021, a first Google employee located in Northern California confirmed receipt and provided Defendants' Managing Director with a proposed non-disclosure agreement

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

COMPLAINT FOR DECLARATORY JUDGMENT

("NDA") by email. In her response to this email, Defendants' Managing Director included a signature block identifying herself as Managing Director of KPI. Between April 2021 and June 2021, Defendants' Managing Director, the first Google employee, and a second Google employee also located in Northern California exchanged several drafts of an NDA and met in two videoconferences. The President and General Counsel of Patent Platform Services, LLC ("PPS"), a patent monetization entity working with Valtrus, was copied on these emails and attended at least one of the videoconferences. Valtrus entered into an NDA with Google on June 9, 2021.

11.    On May 13, 2021, Defendants' Managing Director sent a letter to the first Google employee which identified three additional patents that Google was allegedly infringing (including the '538 patent).

12.    On June 2, 2021, the second Google employee met with Defendants' Managing Director and PPS's President and General Counsel, and discussed topics such as Valtrus's patent enforcement plan in general. On June 23, 2021, the second Google employee and a third Google employee met with Defendants' Managing Director and PPS's President and General Counsel, and discussed possible licensing considerations. Following the June 23rd meeting, Defendants' Managing Director sent the second and third Google employees what was identified as a "list of Valtrus patents."

13.    On August 4, 2021, Defendants' Managing Director introduced PPS's Executive Vice President to the second and third Google employees via email. Defendants' Managing Director wrote that PPS's Executive Vice President "is helping me with these licensing discussions."

14.    On September 9, 2021, the second and third Google employees received a third letter from Defendants' Managing Director, accusing Google products and services of infringing another five patents. The letter was sent as an attachment to an email from PPS's Executive Vice President.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

COMPLAINT FOR DECLARATORY JUDGMENT

15.     On November 15, 2021, Defendants' Managing Director sent a fourth letter to the second Google employee, accusing Google products and services of infringing another thirteen patents (including the '588 patent).

**C.     Defendants' Patent Litigation Against Google**

16.     Defendants have sued Google for infringing patents from the same patent portfolio as the nine Patents-in-Suit in four different lawsuits, including in the Northern District of California ("NDCA").

17.     On January 10, 2022, less than two months after Defendants' fourth letter accusing Google of infringement, Valtrus filed suit against Google. Valtrus alleged Google infringed Patent Nos. 6,728,704 ("the '704 patent"), 6,738,764 ("the '764 patent"), 6,816,809 ("the '809 patent"), 7,346,604 ("the '604 patent"), 7,523,454 ("the '454 patent"), and 7,748,005 ("the '005 patent"). *Valtrus Innovations Ltd. v. Google LLC*, No. 3:22-cv-00066-N (N.D. Tex. Jan. 10, 2022). Valtrus had accused Google of infringing two of these patents, the '809 and '454 patents, in its letters to Google.

18.     On July 12, 2024, Defendants sued Google, alleging Google infringed the '704, '809, and '604 patents. *Valtrus Innovations Ltd. v. Google LLC*, No. 3:24-cv-1795 (N.D. Tex. July 12, 2024). This case was consolidated with case number 3:22-cv-00066-N, above. The consolidated case was then transferred to the NDCA as case number 5:25-cv-07063-PCP.

19.     On December 27, 2024, Defendants sued Google, alleging Google infringed U.S Patent No. 7,939,967 ("the '967 patent"). *Valtrus Innovations Ltd. v. Google LLC*, No. 3:24-cv-03249-S (N.D. Tex. Dec. 27, 2024). This case was dismissed by joint stipulation on December 18, 2025.

20.     Defendants filed a fourth lawsuit against Google in the NDCA. On August 25, 2025, Defendants sued Google, alleging Google infringed U.S Patent No. 7,930,539 ("the '539 patent").

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Valtrus Innovations Ltd. v. Google LLC*, No. 5:25-cv-07179-PCP (N.D. Cal. Aug. 25, 2025). Defendants voluntarily dismissed the case without prejudice on January 9, 2026.

**D.      Defendants' Litigation Asserting the Patents-in-Suit, Including Against Google Customers**

21.      Defendants have brought patent infringement claims against Google customers, including Home Depot. *Valtrus Innovations Ltd. v. The Home Depot,* No. 2:25-cv-00081-JRG (E.D. Tex. Jan. 27, 2025)*.* Defendants asserted that the '332 patent was infringed by Home Depot's alleged use of Google Kubernetes Engine, Google's managed implementation of Kubernetes. *Id.* Dkt. 38 at 9. Defendants asserted two additional patents, U.S. Patent Nos. 7,068,597 and 7,107,326, were infringed by Home Depot's alleged use of Google Cloud Load Balancer services. *Id.* Dkt. 38 at 3.

22.      Defendants have also asserted six of the Patents-in-Suit in cases brought against other companies. For example, on January 15, 2024, Defendants asserted the '538 patent against SAP America, Inc. and SAP SE, and later amended their complaint to additionally allege infringement of the '244 and '738 patents. *Valtrus Innovations Ltd. v. SAP America, Inc.*, No. 2:24-cv-00021 (E.D. Tex. Jan. 15, 2024). On May 9, 2025, Defendants asserted the '416, '332, and '686 patents against FedEx Corporation and FedEx Office and Print Services, Inc. and against NetApp, Inc. *Valtrus Innovations Ltd. v. FedEx Corporation*, No. 2:25-cv-00516 (E.D. Tex. May 9, 2025); *Valtrus Innovations Ltd. v. NetApp, Inc.*, No. 2:25-cv-00517 (E.D. Tex. May 9, 2025). And, on January 27, 2025, Defendants asserted the '332 patent against twelve entities including Lenovo Group Limited, Lenovo PC HK Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited. *Valtrus Innovations Ltd. v. Lenovo Group Ltd.*, No. 2:25-cv-00080 (E.D. Tex. Jan. 27, 2025).

23.      In total, Defendants have brought patent infringement claims against at least 20 companies.

**THE PARTIES**

24.    Google is a subsidiary of Alphabet Inc. and a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

25.    Google was founded in 1998, and has a mission to organize the world's information and make it universally accessible and useful. Over the past two decades, in service of that mission, Google has become one of the world's most innovative technology companies. In 2014, Google announced Kubernetes as an open source project, based on an earlier internal Google cluster management system called the Borg System. Companies such as Microsoft, RedHat, IBM, and Docker joined the project. In 2015, Google donated the Kubernetes technology to the Cloud Native Computing Foundation.

26.    Valtrus is an Irish entity organized under the laws of Ireland, with its registered office at The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland. Valtrus is a wholly-owned subsidiary of KPI.

27.    KPI is an Irish entity organized under the laws of Ireland, with its registered office at The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland. KPI is the beneficial owner of the Patents-in-Suit, for which Valtrus serves as trustee.

**JURISDICTIONAL STATEMENT**

28.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. Jurisdiction is also proper under 28 U.S.C. § 1332 because Google is a citizen of a state, and Valtrus and KPI are citizens or subjects of a foreign state, and the value of the controversy exceeds $75,000.00.

29.    This Court can provide the declaratory relief sought in this Declaratory Judgment Complaint under 28 U.S.C. § 2201 because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction. An actual case and controversy exists at least because:

Hogan Lovells
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Google does not infringe and has not infringed any claims of the Patents-in-Suit; Defendants have sent Google customers letters accusing them of infringing the Patents-in-Suit through their use of Kubernetes, Apache Kafka, and Apache Hadoop; and Google products provide managed services for Kubernetes ("Managed Service for Kubernetes"), Apache Hadoop ("Managed Service for Hadoop"), and Apache Kafka ("Managed Service for Kafka").

30.     This Court has personal jurisdiction over Defendants because Defendants have engaged in actions in and directed toward the NDCA that have established sufficient minimum contacts. Further, the exercise of personal jurisdiction based on Defendants' contacts does not offend traditional notions of fairness and substantial justice.

31.     Defendants have availed themselves of the NDCA to enforce their patent rights as to other patents from the HPE Patent Portfolio, the same patent portfolio as the Patents-in-Suit. In addition to bringing suit against Google in the NDCA as discussed above, on July 25, 2025, Defendants sued Cloudflare, Inc. in the NDCA alleging infringement of patents from the HPE Patent Portfolio. *Valtrus Innovations Ltd. v. Cloudflare, Inc.*, No. 5:25-cv-06259-PCP (N.D. Cal. July 25, 2025).

32.     Valtrus has purposefully directed its patent licensing and enforcement activities with respect to the HPE Patent Portfolio, which includes the Patents-in-Suit, to companies having principal places of business in this judicial district, including at least Google and Cloudflare.

33.     For example, as discussed above, Valtrus directed communications to Google employees located in Northern California in 2021. As noted, these communications included meetings and written correspondence between these employees and Defendants' Managing Director over a period of seven months. Among the written correspondence were four letters sent by Defendants' Managing Director, which together asserted that Google products and services infringe thirty-five patents in the HPE Patent Portfolio.

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY JUDGMENT

34.     In addition to Valtrus's communications with Google, Valtrus has sent at least one letter to a Google customer located in this District asserting patent infringement of other patents from the HPE Patent Portfolio through use of Google's products.

35.     Further, Defendants obtained the Patents-in-Suit by contracting with Hewlett Packard Enterprise Company, L.P., an entity and signatory located in this District, having its "innovation hub" at 6280 America Center Drive, San Jose, California 95002, and with Hewlett Packard Enterprise Development, L.P., a Texas limited partnership. On information and belief, this conduct directed at this District included an expectation by Defendants of ongoing communications and interactions with Hewlett Packard Enterprise Company, L.P., to assist in Defendants' enforcement activities related to the HPE Patent Portfolio, including Defendants' patent infringement allegations and licensing conduct. Google's allegations are made based on reasonable investigation and, to the extent necessary, can be further developed through jurisdictional discovery.

36.     As discussed above, Defendants have conducted business through PPS, a patent monetization entity, in their licensing and enforcement activities related to the Patents-in-Suit and the other patents in the HPE Patent Portfolio, including within this District. PPS has at least one employee residing in this District. On information and belief, Defendants continue to conduct business through PPS related to the Patents-in-Suit and other patents in the HPE Patent Portfolio, and this employee is actively conducting licensing activity for Valtrus.

37.     KPI directs, controls, authorizes, and benefits from Valtrus's enforcement campaign. KPI is Valtrus's parent company. KPI is the ultimate economic beneficiary and directing principal behind the Valtrus licensing/assertion program described above. Valtrus acted and continues to act on KPI's behalf in targeting Google and its customers. KPI therefore purposefully directed the same California-aimed conduct through Valtrus, its wholly-owned subsidiary.

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) at least because Defendants are foreign companies and as such may be sued in any judicial district in the United States in which Defendants are subject to the Court's personal jurisdiction; Defendants are subject to personal jurisdiction in this District; and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

39.    An actual and justiciable controversy exists under 28 U.S.C. §§ 2201–2202 between Google and Defendants as to whether the claims in the Patents-in-Suit are infringed by Google's products.

## DIVISIONAL ASSIGNMENT

40.    Pursuant to Civil L.R. 3-2(c) and 3-5(b), this is an Intellectual Property Rights Action subject to assignment on a district-wide basis.

## FIRST COUNT

## (Declaration of Non-Infringement of U.S. Patent 8,379,538)

41.    Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

42.    Defendants claim to own all rights, title, and interest in and under the '538 patent. The '538 patent is titled "Model-Driven Monitoring Architecture." The '538 patent issued on February 19, 2013 from U.S. Patent Application No. 11/158,756, filed on June 22, 2005. The '538 patent lists Jerome Rolia, Keith I. Farkas, Martin F. Arlitt, and Sven Graupner as the inventors and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '538 patent is attached hereto as Exhibit 1.

43.    Google, including Google Kubernetes Engine, does not directly or indirectly infringe any claim of the '538 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 7 as an example claim of the '538 patent allegedly infringed by Google customers.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 7 of the '538 patent. Claim 7 recites: "A method comprising: providing a machine-readable monitoring model that defines configuration of a monitoring environment; responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change; and an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration." Google does not infringe Claim 7 of the '538 patent at least because Google Kubernetes Engine does not meet or embody one or more of the following limitations as used in the claimed inventions: "providing a machine-readable monitoring model that defines configuration of a monitoring environment," "responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change," and "an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration." For example, Google Kubernetes Engine uses a Horizontal Pod Autoscaler (HPA) to automatically adjust the number of pod replicas in a deployment set based on observed metrics rather than "a change occurring in said monitoring environment's configuration," as the claim requires.

44.     No third party infringes any claim of the '538 patent by using Google Kubernetes Engine. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Google Kubernetes Engine and the use of Google Kubernetes Engine do not directly infringe the '538 patent. Neither Google Kubernetes Engine, nor any portion thereof, is designed for use in any combination which infringes any claim of the '538 patent. To the contrary, Google Kubernetes Engine has substantial uses that do not infringe any claim of the '538 patent and are not accused by Defendants of infringing the '538 patent.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

45.     A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '538 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '538 patent.

46.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '538 patent.

**SECOND COUNT**

**(Declaration of Non-Infringement of U.S. Patent 7,251,588)**

47.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

48.     Defendants claim to own all rights, title, and interest in and under the '588 patent. The '588 patent is titled "System for Metric Introspection in Monitoring Sources." The '588 patent issued on July 31, 2007 from U.S. Patent Application No. 11/158,868, filed on June 22, 2005. The '588 patent lists Sven Graupner, Keith I. Farkas, Jerome Rolia, and Martin F. Arlitt as the inventors and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '588 patent is attached hereto as Exhibit 2.

49.     Google, including Google Kubernetes Engine, does not directly or indirectly infringe any claim of the '588 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 13 as an example claim of the '588 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 13 of the '588 patent. Claim 13 of the '588 patent recites: "A method comprising: storing metric definitions for at least one monitored component in a machine-readable format to a data storage device; a monitoring tool accessing the machine-readable metric definitions to determine the metric definitions used in monitoring data collected for the at least one monitored component; the monitoring tool accessing said monitoring data collected for the at least one monitored component; and

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

the monitoring tool processing the monitoring data based at least in part on the corresponding metric definitions." Google does not infringe Claim 13 of the '588 patent at least because Google Kubernetes Engine does not meet or embody one or more of the following limitations as used in the claimed inventions: "storing metric definitions for at least one monitored component in a machine-readable format to a data storage device," "a monitoring tool accessing the machine-readable metric definitions to determine the metric definitions used in monitoring data collected for the at least one monitored component," "the monitoring tool accessing said monitoring data collected for the at least one monitored component," and "the monitoring tool processing the monitoring data based at least in part on the corresponding metric definitions." For example, Google Kubernetes Engine uses hardcoded metrics rather than "machine-readable metric definitions," as the claim requires.

50.    No third party infringes any claim of the '588 patent by using Google Kubernetes Engine. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Google Kubernetes Engine and the use of Google Kubernetes Engine does not directly infringe the '588 patent. Neither Google Kubernetes Engine nor any portion thereof, is designed for use in any combination which infringes any claim of the '588 patent. To the contrary, Google Kubernetes Engine has substantial uses that do not infringe any claim of the '588 patent and are not accused by Defendants of infringing the '588 patent.

51.    A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '588 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '588 patent.

52.    Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '588 patent.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD COUNT

### (Declaration of Non-Infringement of U.S. Patent 8,370,416)

53.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

54.     Defendants claim to own all rights, title, and interest in and under the '416 patent. The '416 patent is titled "Compatibility Enforcement in Clustered Computing Systems." The '416 patent issued on February 5, 2013 from U.S. Patent Application No. 11/411,732, filed on April 26, 2006. The '416 patent lists David J. Hoover, Bernard A. Reed, III, Marjorie Krueger, and Douglas L. Voigt as the inventors and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '416 patent is attached hereto as Exhibit 3.

55.     Google, including Google Kubernetes Engine, does not directly or indirectly infringe any claim of the '416 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '416 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '416 patent. Claim 1 of the '416 patent recites: "A method of creating a clustered computing system, comprising: storing license information for a computing cluster in a memory module associated with a computing node, wherein the licensing information includes a bundle-type parameter that identifies a size of the cluster and at least one additional bundle-type characteristic of the cluster, and one or more node license parameters that identifies a characteristic of a computing node; initializing the computing cluster in a first computing node; adding one or more available computing nodes to the computing cluster; and activating the computing cluster when the computing cluster includes a number of nodes that complies with the bundle-type parameter." Google does not infringe Claim 1 of the '416 patent at least because Google Kubernetes Engine does not meet or embody one or more of the following limitations as used in the claimed inventions: "storing license information for a computing

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

COMPLAINT FOR DECLARATORY JUDGMENT

cluster in a memory module associated with a computing node, wherein the licensing information includes a bundle-type parameter that identifies a size of the cluster and at least one additional bundle-type characteristic of the cluster, and one or more node license parameters that identifies a characteristic of a computing node," "initializing the computing cluster in a first computing node," "adding one or more available computing nodes to the computing cluster," and "activating the computing cluster when the computing cluster includes a number of nodes that complies with the bundle-type parameter." For example, Google Kubernetes Engine uses a non-cluster-specific minimum number of nodes for clusters with high availability rather than "license information for a computing cluster . . . [that] includes a bundle-type parameter that identifies a size of the cluster," as the claim requires.

56.    No third party infringes any claim of the '416 patent by using Google Kubernetes Engine. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Google Kubernetes Engine and the use of Google Kubernetes Engine do not directly infringe the '416 patent. Neither Google Kubernetes Engine, nor any portion thereof, is designed for use in any combination which infringes any claim of the '416 patent. To the contrary, Google Kubernetes Engine has substantial uses that do not infringe any claim of the '416 patent and are not accused by Defendants of infringing the '416 patent.

57.    A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '416 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '416 patent.

58.    Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '416 patent.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

COMPLAINT FOR DECLARATORY JUDGMENT

## FOURTH COUNT

### (Declaration of Non-Infringement of U.S. Patent 7,640,332)

59.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

60.     Defendants claim to own all rights, title, and interest in and under the '332 patent. The '332 patent is titled "System and Method for Hot Deployment/Redeployment in Grid Computing Environment." The '332 patent issued on December 29, 2009 from U.S. Patent Application No. 12/003,182, filed on December 20, 2007. The '332 patent lists Sanjay Dahiya as the inventor and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '332 patent is attached hereto as Exhibit 4.

61.     Google, including Google Kubernetes Engine, does not directly or indirectly infringe any claim of the '332 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '332 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '332 patent. Claim 1 of the '332 patent recites: "A method for hot deployment and/or redeployment in grid computing environment, wherein the grid computing environment includes one or more grid nodes, comprising: adding a new version of an application release bundle in a repository server; determining by a discovery services module which of the one or more grid nodes are running an application associated with the added new version of the application release bundle upon adding the new version of the application release bundle in the repository server; notifying a client application manager associated with one or more of the determined grid nodes about adding the new version of the application release bundle along with a type of data transfer protocol to use; and hot deploying/redeploying the new version of the application release bundle on running one or more application servers in an associated grid node using an appropriate hot deployment plug-in based on the

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY JUDGMENT

data transfer protocol by a respective one of the client application managers." Google does not infringe Claim 1 of the '332 patent at least because Google Kubernetes Engine does not meet or embody one or more of the following limitations as used in the claimed inventions: "adding a new version of an application release bundle in a repository server," "determining by a discovery services module which of the one or more grid nodes are running an application associated with the added new version of the application release bundle upon adding the new version of the application release bundle in the repository server," "notifying a client application manager associated with one or more of the determined grid nodes about adding the new version of the application release bundle along with a type of data transfer protocol to use," and "hot deploying/redeploying the new version of the application release bundle on running one or more application servers in an associated grid node using an appropriate hot deployment plug-in based on the data transfer protocol by a respective one of the client application managers." For example, Google Kubernetes Engine deploys application updates by deploying the new version on new pods, waiting for those pods to start, and then removing the old pods rather than "hot deploying/redeploying the new version of the application release bundle . . . using an appropriate hot deployment plug-in," as the claim requires.

62.    No third party infringes any claim of the '332 patent by using Google Kubernetes Engine. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Google Kubernetes Engine and the use of Google Kubernetes Engine do not directly infringe the '332 patent. Neither Google Kubernetes Engine, nor any portion thereof, is designed for use in any combination which infringes any claim of the '332 patent. To the contrary, Google Kubernetes Engine has substantial uses that do not infringe any claim of the '332 patent and are not accused by Defendants of infringing the '332 patent.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

COMPLAINT FOR DECLARATORY JUDGMENT

63.     A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '332 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '332 patent.

64.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '332 patent.

**FIFTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent 7,904,686)**

65.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

66.     Defendants claim to own all rights, title, and interest in and under the '686 patent. The '686 patent is titled "Data Security for use with a File System." The '686 patent issued on March 8, 2011, from U.S. Patent Application No. 12/152,595, filed on May 13, 2008. The '686 patent lists Ranganath G. Iyengar as the inventor and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '686 patent is attached hereto as Exhibit 5.

67.     Google, including Managed Service for Hadoop, does not directly or indirectly infringe any claim of the '686 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '686 allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '686 patent. Claim 1 of the '686 patent recites: "A method of providing data security for use with a file system, the method comprising: applying a mapping function to data block numbers that are associated with a file, wherein the data block numbers are contained in an index node associated with said file; and obtaining mapped data block numbers after applying the mapping function, wherein the mapped data block numbers are addresses of data of the file in a storage device." Google does not infringe Claim 1 of the '686 patent at least because Managed Service for Hadoop does not meet

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

or embody one or more of the following limitations as used in the claimed inventions: "applying a mapping function to data block numbers that are associated with a file, wherein the data block numbers are contained in an index node associated with said file," and "obtaining mapped data block numbers after applying the mapping function, wherein the mapped data block numbers are addresses of data of the file in a storage device." For example, in Managed Service for Hadoop, the HDFS NameNode determines the DataNode at which to store data blocks rather than "obtaining mapped data block numbers after applying the mapping function, wherein the mapped data block numbers are addresses of data of the file in a storage device," as the claim requires.

68.    No third party infringes any claim of the '686 patent by using Managed Service for Hadoop. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Managed Service for Hadoop and the use of Managed Service for Hadoop do not directly infringe the '686 patent. Neither Managed Service for Hadoop, nor any portion thereof, is designed for use in any combination which infringes any claim of the '686 patent. To the contrary, Managed Service for Hadoop has substantial uses that do not infringe any claim of the '686 patent and are not accused by Defendants of infringing the '686 patent.

69.    A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '686 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '686 patent.

70.    Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '686 patent.

## SIXTH COUNT

### (Declaration of Non-Infringement of U.S. Patent 7,730,218)

71.    Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

72.     Defendants claim to own all rights, title, and interest in and under the '218 patent. The '218 patent is titled "Method and System for Configuration and Management of Client Access to Network-Attached-Storage." The '218 patent issued on June 1, 2010 from U.S. Patent Application No. 11/888,596, filed on July 31, 2007. The '218 patent lists Jon Paul Sullivan as the inventor and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '218 patent is attached hereto as Exhibit 6.

73.     Google, including Managed Service for Hadoop, does not directly or indirectly infringe any claim of the '218 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '218 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '218 patent. Claim 1 of the '218 patent recites: "A method for connecting a target computer system in a networked computer environment to target network-attached-storage object in the networked computer environment, the method comprising: providing a master-agent executable that continuously executes on a computer system in the networked computer environment; constructing, by the master agent, an executable code block that, when executed on the target computer system, connects the target computer system to the target network-attached-storage object; and forwarding, by the master agent, the executable code block to the target computer system for execution on the target computer system." Google does not infringe Claim 1 of the '218 patent at least because Managed Service for Hadoop does not meet or embody one or more of the following limitations as used in the claimed inventions: "providing a master-agent executable that continuously executes on a computer system in the networked computer environment," "constructing, by the master agent, an executable code block that, when executed on the target computer system, connects the target computer system to the target network-attached-storage object," and "forwarding, by the master agent, the

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

executable code block to the target computer system for execution on the target computer system." For example, in Managed Service for Hadoop, the YARN ResourceManager schedules a task using previously constructed applications to run on a NodeManager rather than "constructing, by the master agent, an executable code block," as the claim requires.

74.     No third party infringes any claim of the '218 patent by using Managed Service for Hadoop. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Managed Service for Hadoop and the use of Managed Service for Hadoop do not directly infringe the '218 patent. Neither Managed Service for Hadoop, nor any portion thereof, is designed for use in any combination which infringes any claim of the '218 patent. To the contrary, Managed Service for Hadoop has substantial uses that do not infringe any claim of the '218 patent and are not accused by Defendants of infringing the '218 patent.

75.     A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '218 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '218 patent.

76.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '218 patent.

### SEVENTH COUNT

### (Declaration of Non-Infringement of U.S. Patent 7,936,738)

77.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

78.     Defendants claim to own all rights, title, and interest in and under the '738 patent. The '738 patent is titled "Fault Tolerant Systems." The '738 patent issued on May 3, 2011 from U.S. Patent Application No. 10/536,625, filed on July 6, 2004. The '738 patent lists Sebastien Bouat as the inventor

and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '738 patent is attached hereto as Exhibit 7.

79.    Google, including Managed Service for Kafka, does not directly or indirectly infringe any claim of the '738 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '738 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '738 patent. Claim 1 of the '738 patent recites: "A method of storing context information in an outgoing message sent from a node including a computing device using a protocol stack having at least one layer, comprising: providing, by the computing device, the outgoing message from an application to a layer of the protocol stack, the outgoing message is destined for an application on a destined node; selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer; obtaining, by the computing device, context information in accordance with the indication; and adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information." Google does not infringe Claim 1 of the '738 patent at least because Managed Service for Kafka does not meet or embody one or more of the following limitations as used in the claimed inventions: "providing, by the computing device, the outgoing message from an application to a layer of the protocol stack, the outgoing message is destined for an application on a destined node," "selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer," "obtaining, by the computing device, context information in accordance with the indication," and "adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information." For example, Managed Service for Kafka always adds any existing protocol

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

header information to its API messages corresponding to the message type rather than "selectively indicating to a layer of the protocol stack that context information should be obtained for that layer," as the claim requires.

80.     No third party infringes any claim of the '738 patent by using Managed Service for Kafka. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Managed Service for Kafka and the use of Managed Service for Kafka does not directly infringe the '738 patent. Neither Managed Service for Kafka nor any portion thereof, is designed for use in any combination which infringes any claim of the '738 patent. To the contrary, Managed Service for Kafka has substantial uses that do not infringe any claim of the '738 patent and are not accused by Defendants of infringing the '738 patent.

81.     A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '738 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '738 patent.

82.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '738 patent.

83.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '738 patent.

## **EIGHTH COUNT**

### **(Declaration of Non-Infringement of U.S. Patent 7,376,953)**

84.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

85.     Defendants claim to own all rights, title, and interest in and under the '953 patent. The '953 patent is titled "Apparatus and Method for Routing a Transaction to a Server." The '953 patent issued on May 20, 2008 from U.S. Patent Application No. 10/020,355, filed on October 29, 2001. The

Hogan Lovells
US LLP
Attorneys At Law
San Francisco

'953 patent lists Shinobu Togasaki as the inventor and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '953 patent is attached hereto as Exhibit 8.

86.     Google, including Managed Service for Kafka, does not directly or indirectly infringe any claim of the '953 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '953 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '953 patent. Claim 1 of the '953 patent recites: "A method for routing a transaction to a front-end server, comprising: identifying at least one attribute-based category for said transaction; attempting to identify at least one of a plurality of front-end servers to process said transaction based at least in part on said identified attribute-based category of said transaction and at least in part on said front-end servers being assigned to execute transactions corresponding to said attribute-based category; when at least one of the front-end servers is identified, routing said transaction to one of said at least one identified front-end server; when no front-end server is identified, routing said transaction to a default one of the front-end servers; determining whether the transaction is associated with a new attribute-based category, and if so, assigning the new attribute based category to one of the front end servers; wherein identifying said at least one front-end server comprises comparing said attribute-based category for said transaction to assigned attribute-based categories for said plurality of front-end servers." Google does not infringe Claim 1 of the '953 patent at least because Managed Service for Kafka does not meet or embody one or more of the following limitations as used in the claimed inventions: "identifying at least one attribute-based category for said transaction," "attempting to identify at least one of a plurality of front-end servers to process said transaction based at least in part on said identified attribute-based category of said transaction and at least in part on said front-end servers being assigned to execute transactions corresponding to said attribute-based category," "when at least one of the front-end servers

COMPLAINT FOR DECLARATORY JUDGMENT

is identified, routing said transaction to one of said at least one identified front-end server," "when no front-end server is identified, routing said transaction to a default one of the front-end servers," "determining whether the transaction is associated with a new attribute-based category, and if so, assigning the new attribute based category to one of the front end servers," and "wherein identifying said at least one front-end server comprises comparing said attribute-based category for said transaction to assigned attribute-based categories for said plurality of front-end servers." For example, when autocreate topic is on, the Managed Service for Kafka bootstrap server assigns a new category to a front-end server and sends info on the front-end server to use to the client, which sends the message to that front-end server, rather than "when no front-end server is identified, routing said transaction to a default one of the front-end servers; [and] determining whether the transaction is associated with a new attribute-based category, and if so, assigning the new attribute based category to one of the front end servers," as the claim requires.

87.    No third party infringes any claim of the '953 patent by using Managed Service for Kafka. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Managed Service for Kafka and the use of Managed Service for Kafka do not directly infringe the '953 patent. Neither Managed Service for Kafka, nor any portion thereof, is designed for use in any combination which infringes any claim of the '953 patent. To the contrary, Managed Service for Kafka has substantial uses that do not infringe any claim of the '953 patent and are not accused by Defendants of infringing the '953 patent.

88.    A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '953 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '953 patent.

89.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '953 patent.

## NINTH COUNT

### (Declaration of Non-Infringement of U.S. Patent 6,889,244)

90.     Google restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

91.     Defendants claim to own all rights, title, and interest in and under the '244 patent. The '244 patent is titled "Method and Apparatus for Passing Messages Using a Fault Tolerant Storage System." The '244 patent issued on May 3, 2005 from U.S. Patent Application No. 09/703,427, filed on October 31, 2000. The '244 patent lists Blaine D. Gaither and Bret A. McKee as the inventors and Hewlett-Packard Development Company, L.P. as the sole assignee. A true and correct copy of the '244 patent is attached hereto as Exhibit 9.

92.     Google, including Managed Service for Kafka, does not directly or indirectly infringe any claim of the '244 patent, either literally or under the doctrine of equivalents. For example, Defendants have identified Claim 1 as an example claim of the '244 patent allegedly infringed by Google customers. Defendants' allegations also implicitly allege direct and/or indirect infringement by Google of at least Claim 1 of the '244 patent. Claim 1 of the '244 patent recites: "A method of transmitting messages between a first node and a second node, wherein the first and second nodes are each coupled to a fault tolerant storage system (FTSS), the method comprising: transmitting a message from the first node to a communication agent in the FTSS; storing the message in a data structure in highly reliable fault-tolerant storage media of the FTSS; processing the message at the FTSS in accordance with a messaging paradigm; and transmitting the message from the FTSS to the second node." Google does not infringe Claim 1 of the '244 patent at least because Managed Service for Kafka does not meet or embody one or more of the following limitations as used in the claimed inventions: "transmitting a message from the

COMPLAINT FOR DECLARATORY JUDGMENT

first node to a communication agent in the FTSS," "storing the message in a data structure in highly reliable fault-tolerant storage media of the FTSS," "processing the message at the FTSS in accordance with a messaging paradigm," and "transmitting the message from the FTSS to the second node." For example, Managed Service for Kafka uses a storage and retrieval paradigm where a client interested in reading data from an Apache Kafka stream is not notified and must initiate a connection with the Kafka server to receive the data, rather than "processing the message at the FTSS in accordance with a messaging paradigm," as the claim requires.

93.     No third party infringes any claim of the '244 patent by using Managed Service for Kafka. Google has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. For at least the reasons explained above, Managed Service for Kafka and the use of Managed Service for Kafka does not directly infringe the '244 patent. Neither Managed Service for Kafka nor any portion thereof, is designed for use in any combination which infringes any claim of the '244 patent. To the contrary, Managed Service for Kafka has substantial uses that do not infringe any claim of the '244 patent and are not accused by Defendants of infringing the '244 patent.

94.     A substantial, immediate, and real controversy therefore exists between Google and Defendants regarding whether Google infringes the '244 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '244 patent.

95.     Google seeks a judgment declaring that Google does not directly or indirectly infringe any claim of the '244 patent.

## PRAYER FOR RELIEF

WHEREFORE, Google prays for judgment as follows:

A.     A declaration that Google does not infringe, directly or indirectly, the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

B.     A declaration that Google does not induce infringement of the Patents-in-Suit;

C.    A declaration that Google does not contributorily infringe on the Patents-in-Suit;

D.    A declaration that judgment be entered in favor of Google and against Defendants on Google's claims;

E.    A finding that this is an exceptional case under 35 U.S.C. § 285;

F.    An award to Google of its costs and attorneys' fees in connection with this action;

G.    Such further and additional relief as the Court deems just, equitable, and proper.


Dated: January 13, 2026                          Respectfully submitted,

                                                 By: */s/ David Perlson*
                                                 David Perlson (Bar No. 209502)
                                                 david.perlson@hoganlovells.com
                                                 Antonio Sistos (Bar No. 238847)
                                                 ton.sistos@hoganlovells.com
                                                 Gurtej Singh (Bar No. 286547)
                                                 tej.singh@hoganlovells.com
                                                 Isabella Bosetti (Bar No. 358767)
                                                 isabella.bosetti@hoganlovells.com
                                                 HOGAN LOVELLS US LLP
                                                 4 Embarcadero Center, Suite 3500
                                                 San Francisco, CA 94111
                                                 Telephone: (415) 374-2300

                                                 *Attorneys for Plaintiff Google LLC*

Hogan Lovells
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY JUDGMENT

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a trial by jury on all issues triable by jury

Dated: January 13, 2026                              Respectfully submitted,

By: */s/ David Perlson*
David Perlson
HOGAN LOVELLS US LLP
*Attorney for Plaintiff Google LLC*

HOGAN LOVELLS
US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY JUDGMENT