Jason G. Sheasby (SBN 205455)
jsheasby@irell.com
Andrew Strabone (SBN 301659)
astrabone@irell.com
Lucas S. Oxenford (SBN 328152)
loxenford@irell.com
Steven Marshack (SBN 364249)
smarshack@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

Anthony Q. Rowles (SBN 301209)
trowles@irell.com
IRELL & MANELLA LLP
840 Newport Center Dr #400
Newport Beach, CA 92660
949-760-0991

*Counsel for Defendants and Counter-Plaintiffs*
*Valtrus Innovations Limited and Key*
*Patent Innovations Limited*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC, | Case No. 3:26-cv-00363-TLT |
| Plaintiff and Counter-Defendant, | **DEFENDANTS AND COUNTER-PLAINTIFFS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| VALTRUS INNOVATIONS LIMITED and KEY PATENT INNOVATIONS LIMITED., | |
| Defendants and Counter-Plaintiffs. | |

Defendants and Counter-Plaintiffs Valtrus Innovations Ltd. ("Valtrus") and Key Patent Innovations Ltd. ("Key Patent") (collectively, "Defendants") respectfully submit this Answer, Affirmative Defenses, and Counterclaims in response to Plaintiff Google LLC's ("Google") Complaint for Declaratory Judgment.

**DEFENDANTS' ANSWER**

Defendants, by and through their undersigned counsel, hereby respond to Plaintiff's Complaint for Declaratory Judgment of Non-Infringement of U.S. Patent Nos. 8,379,538; 7,251,588; 8,370,416; 7,640,332; 7,904,686; 7,730,218; 7,936,738; 7,376,953 and 6,889,244 (Dkt. 1) as follows:

1.     Defendants admit that Google purports to seek the relief in Paragraph 1.

2.     Defendants are without information regarding who Google considers to be a "customer," and Google has not identified any specific customers or communications, and on that basis cannot admit allegations relating to Google's customers.  Defendants otherwise deny the allegations of Paragraph 2.

3.     Paragraph 3 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 3, except as they relate to the Asserted Patents included in Defendants' Counterclaim, *infra*.

4.     Defendants admit that Valtrus has represented that it is "successor in interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor companies, including Compaq, Verity, and Hewlett-Packard Development Company" and that Valtrus' business involves licensing the patents it acquired from HPE. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

5.     Defendants are without information regarding who Google considers to be a "customer," and Google has not identified any specific customers or communications, and on that basis cannot admit allegations relating to Google's customers. Defendants otherwise deny the allegations of Paragraph 5.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 2 -                    Case No. 3:26-cv-00363-TLT

6.      Defendants are without information regarding who Google considers to be a "customer," and Google has not identified any specific customers or communications, and on that basis cannot admit allegations relating to Google's customers. Defendants otherwise deny the allegations of Paragraph 6.

7.      Defendants are without information regarding who Google considers to be a "customer," and Google has not identified any specific customers or communications, and on that basis cannot admit allegations relating to Google's customers. Defendants otherwise deny the allegations of Paragraph 7.

8.      Defendants admit that Valtrus has sent licensing communications to Google, in which Valtrus provided Google notice that Google needed a license to certain patents in the Valtrus patent portfolio. Defendants otherwise deny the allegations of Paragraph 8.

9.      Defendants admit that Google has been on notice of its need for a license to the Valtrus patent portfolio since April 14, 2021. Valtrus has directed licensing communications to Google, including the letter referenced, which speak for themselves. Defendants otherwise deny the allegations of Paragraph 9.

10.     Defendants admit that they had licensing communications with Google, which speaks for itself. Defendants otherwise deny the allegations of Paragraph 10 and/or are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 10 and accordingly deny the allegations of Paragraph 10.

11.     Defendants admit that they sent the letter referenced to Google, which speaks for itself. Defendants otherwise deny the allegations of Paragraph 11.

12.     Defendants admit that they had licensing communications with Google, which speak for themselves. Defendants otherwise deny the allegations of Paragraph 12.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 3 -          Case No. 3:26-cv-00363-TLT

13. Defendants admit that they sent the email referenced, which speaks for itself. Defendants otherwise deny the allegations of Paragraph 13.

14. Defendants admit that they sent the letter and email referenced, which speak for themselves. Defendants otherwise deny the allegations of Paragraph 14.

15. Defendants admit that they sent the letter referenced, which speaks for itself. Defendants otherwise deny the allegations of Paragraph 15.

16. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

17. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

18. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

19. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

20. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

21. To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT          - 4 -          Case No. 3:26-cv-00363-TLT

22.     To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

23.     To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

24.     Defendants are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 24 and accordingly deny the allegations of Paragraph 24.

25.     Defendants are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 25 and accordingly deny the allegations of Paragraph 25.

26.     Defendants admit the allegations of Paragraph 26.

27.     Defendants admit the allegations of Paragraph 27.

28.     Paragraph 28 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 28.

29.     Paragraph 29 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 29.

30.     Paragraph 30 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 30.

31.     To the extent the complaint references specific allegations in separate actions, the pleadings of any such actions speak for themselves, and therefore no response is needed. Except as expressly admitted, Defendants deny the allegations of this paragraph.

32.     Defendants admit that they directed patent licensing and enforcement activities towards Google and Cloudflare. Defendants otherwise are without information or knowledge

sufficient to form a belief as to the allegations of Paragraph 32 and accordingly deny the allegations of Paragraph 32.

33. Defendants admit that they sent licensing communications to Google, which speak for themselves. Defendants otherwise deny the allegations of Paragraph 33 and/or are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 33 and accordingly deny the allegations of Paragraph 33.

34. Defendants are without information regarding who Google considers to be a "customer," and Google has not identified any specific customers or communications, and on that basis cannot admit allegations relating to Google's customers. Defendants otherwise deny the allegations of Paragraph 34.

35. Defendants admit that they contracted with and acquired the Patents-in-Suit from HPE. Defendants otherwise deny the allegations of Paragraph 35 and/or are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 35 and accordingly deny the allegations of Paragraph 35.

36. Defendants admit that they engaged non-party PPS in connection with intellectual property matters. Defendants admit that non-party PPS has an employee residing in this District. Defendants otherwise deny the allegations of Paragraph 36.

37. Defendants admit that Valtrus is a wholly-owned subsidiary of Key Patent. Defendants further admit that Key Patent has a financial interest in the licensing of Valtrus' patent portfolio and authorizes Valtrus' licensing activities. Defendants otherwise deny the allegations of Paragraph 37.

38. Defendants do not contest that venue is proper.

39. Paragraph 39 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 39.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                     - 6 -                     Case No. 3:26-cv-00363-TLT

40.    Defendants do not contest that this action is subject to assignment on a district-wide basis.

## FIRST COUNT

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,379,538)

41.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

42.    Defendants admit the allegations of Paragraph 42.

43.    Paragraph 43 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 43.

44.    Paragraph 44 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 44.

45.    Paragraph 45 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest that a controversy currently exists regarding the '538 Patent.

46.    Defendants admit that Google seeks the relief stated in Paragraph 46, but otherwise deny the allegations of Paragraph 46.

## SECOND COUNT

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,251,588)

47.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

48.    Defendants admit the allegations of Paragraph 48.

49.    Paragraph 49 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 49.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT            - 7 -            Case No. 3:26-cv-00363-TLT

50.    Paragraph 50 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 50.

51.    Paragraph 51 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 51.

52.    Defendants admit that Google seeks the relief stated in Paragraph 52, but otherwise deny the allegations of Paragraph 52.

### THIRD COUNT

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,370,416)

53.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

54.    Defendants admit the allegations of Paragraph 54.

55.    Paragraph 55 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 55.

56.    Paragraph 56 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 56.

57.    Paragraph 57 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 57.

58.    Defendants admit that Google seeks the relief stated in Paragraph 58, but otherwise deny the allegations of Paragraph 58.

### FOURTH COUNT

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,640,332)

59.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

60.    Defendants admit the allegations of Paragraph 60.

61.    Paragraph 61 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 61.

62.    Paragraph 62 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 62.

63.    Paragraph 63 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest that a controversy currently exists regarding the '332 Patent.

64.    Defendants admit that Google seeks the relief stated in Paragraph 64, but otherwise deny the allegations of Paragraph 64.

## FIFTH COUNT

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,904,686)

65.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

66.    Defendants admit the allegations of Paragraph 66.

67.    Paragraph 67 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 67.

68.    Paragraph 68 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 68.

69.    Paragraph 69 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest that a controversy currently exists regarding the '686 Patent.

70.    Defendants admit that Google seeks the relief stated in Paragraph 70, but otherwise deny the allegations of Paragraph 70.

## SIXTH COUNT

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 9 -                Case No. 3:26-cv-00363-TLT

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,730,218)**

71.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

72.    Defendants admit the allegations of Paragraph 72.

73.    Paragraph 73 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 73.

74.    Paragraph 74 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 74.

75.    Paragraph 75 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 75.

76.    Defendants admit that Google seeks the relief stated in Paragraph 76, but otherwise deny the allegations of Paragraph 76.

## SEVENTH COUNT

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,936,738)**

77.    Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

78.    Defendants admit the allegations of Paragraph 78.

79.    Paragraph 79 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 79.

80.    Paragraph 80 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 80.

81.    Paragraph 81 states a legal conclusion to which no response is required. To the extent a response is required, Defendants do not contest that a controversy currently exists regarding the '738 Patent.

82. Defendants admit that Google seeks the relief stated in Paragraph 82, but otherwise deny the allegations of Paragraph 82.

83. Defendants admit that Google seeks the relief stated in Paragraph 83, but otherwise deny the allegations of Paragraph 83.

**EIGHTH COUNT**

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,376,953)**

84. Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

85. Defendants admit the allegations of Paragraph 85.

86. Paragraph 86 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 86.

87. Paragraph 87 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 87.

88. Paragraph 88 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 88.

89. Defendants admit that Google seeks the relief stated in Paragraph 89, but otherwise deny the allegations of Paragraph 89.

**NINTH COUNT**

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,889,244)**

90. Defendants restate and incorporate by reference the responses in Defendants' Answer and the allegations in Defendants' Counterclaims as set forth fully herein.

91. Defendants admit the allegations of Paragraph 91.

92. Paragraph 92 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 92.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT          - 11 -          Case No. 3:26-cv-00363-TLT

93.    Paragraph 93 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 93.

94.    Paragraph 94 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 94.

95.    Defendants admit that Google seeks the relief stated in Paragraph 95, but otherwise deny the allegations of Paragraph 95.

## FIRST AFFIRMATIVE DEFENSE

### (Infringement)

Google's declaratory judgment claims should be denied because Google has infringed, directly and/or indirectly (including induced or contributorily), the Patents-in-Suit either literally or under the doctrine of equivalents.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Subject Matter Jurisdiction)

Google's declaratory judgment claims should be dismissed for lack of a case or controversy, including because Defendants have provided Google a covenant not to sue on U.S. Patent Nos. 7,251,588; 8,370,416; 7,730,218; 7,376,953; and 6,889,244.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Google's declaratory judgment claims should be dismissed for failure to state facts sufficient to constitute a cause of action against Defendants.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Google's declaratory judgment claims are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 12 -          Case No. 3:26-cv-00363-TLT

**(Estoppel)**

Google is estopped from pursuing its declaratory judgment claims by reason of their own actions and course of conduct.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver)

Google's declaratory judgment claims are barred to the extent that Google waived its rights, if any, to pursue them by reason of its own actions and course of conduct.

## SEVENTH AFFIRMATIVE DEFENSE

### (Laches)

Google's declaratory judgment claims are barred by the doctrine of laches.

## COUNTERCLAIMS

Defendants and Counter-Plaintiffs Valtrus Innovations Ltd. and Key Patent Innovations Ltd., by and through their undersigned counsel, hereby plead the following Counterclaims for Patent Infringement against Plaintiff Google LLC and allege as follows:

## THE PARTIES AND JURISDICTION

1. Defendant Valtrus is the successor in interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor companies, including Compaq, Verity, and Hewlett-Packard Development Company (collectively, "HPE"). Valtrus is an Irish entity duly organized and existing under the laws of the Republic of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Valtrus is the assignee of U.S. Patent Nos. 8,379,538 ("the '538 Patent"), 7,640,332 ("the '332 Patent"), 7,904,686 ("the '686 Patent"), 7,936,738 ("the '738 Patent"), and 7,057,509 ("the '509 Patent") (collectively, the "Asserted Patents").

3. Defendant Key Patent is the beneficiary of a trust pursuant to which Valtrus owns, holds, and asserts the Asserted Patents. Key Patent is an Irish entity duly organized and existing under the laws of the Republic of Ireland. The address of the registered office of Key Patent is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4. The Asserted Patents were developed by inventors working for HPE. HPE and its predecessors have been developing innovative search, computer processing, and server technology for decades.

5. On information and belief, Defendant Google is a limited liability company duly organized and existing under the laws of the State of Delaware, having a regular and established

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 14 -                    Case No. 3:26-cv-00363-TLT

place of business in the Northern District of California, including at the "Googleplex" located at 1600 Amphitheatre Parkway, Mountain View, California 94043 in Santa Clara County.

6. These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 et seq. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## FIRST COUNTERCLAIM

### (Infringement of U.S. Patent No. 7,640,332)

7. Defendants re-allege and incorporate by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

8. The '332 Patent, entitled "System and method for hot deployment/redeployment in grid computing environment," was duly and lawfully issued on December 29, 2009. A true and correct copy of the '332 Patent is attached to the Complaint as Exhibit 4. *See* Dkt. 1, Ex. 4.

9. Defendants own by assignment the entire right, title, and interest in and to the '332 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

10. Defendants are informed and believe, and on this basis allege, that Google, agents of Google, and/or third parties acting under Google's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '332 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine. Google controls Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine as a whole and obtains benefits from them.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 15 -                    Case No. 3:26-cv-00363-TLT

11.     For example, Google Kubernetes Engine embodies every limitation of at least claim 1 of the '332 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

**["1. A method for hot deployment and/or redeployment in grid computing environment, wherein the grid computing environment includes one or more grid nodes, comprising:"]**

12.     Google Kubernetes Engine uses a method for hot deployment and/or redeployment in grid computing environment, wherein the grid computing environment includes one or more grid nodes.

13.     For example, Google Kubernetes Engine uses a method of rolling updates to allow for hot deployment and redeployment (rollouts and rollbacks). Using rolling updates, application bundles, packaged in Pods, are updated and scheduled on grid nodes (e.g., Worker nodes). Worker nodes are virtual or physical machines, the collection of which are contained in the grid computing environment, known as a Cluster.

> ## Automated rollouts and rollbacks
>
> Kubernetes progressively rolls out changes to your application or its configuration, while monitoring application health to ensure it doesn't kill all your instances at the same time. If something goes wrong, Kubernetes will rollback the change for you. Take advantage of a growing ecosystem of deployment solutions.[1]

---

[1] https://kubernetes.io/

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 16 -                    Case No. 3:26-cv-00363-TLT

## Core Components

A Kubernetes cluster consists of a control plane and one or more worker nodes. Here's a brief overview of the main components:

## Control Plane Components

Manage the overall state of the cluster:

**kube-apiserver**

The core component server that exposes the Kubernetes HTTP API

**etcd**

Consistent and highly-available key value store for all API server data

**kube-scheduler**

Looks for Pods not yet bound to a node, and assigns each Pod to a suitable node.

**kube-controller-manager**

Runs controllers to implement Kubernetes API behavior.

**cloud-controller-manager** (optional)

Integrates with underlying cloud provider(s). [2]

## Node Components

Run on every node, maintaining running pods and providing the Kubernetes runtime environment:

**kubelet**

Ensures that Pods are running, including their containers.

**kube-proxy** (optional)

Maintains network rules on nodes to implement Services.

**Container runtime**

Software responsible for running containers. Read Container Runtimes to learn more. [3]

## Updating an application

> Rolling updates allow Deployments' update to take place with zero downtime by incrementally updating Pods instances with new ones. [4]

---

[2] https://kubernetes.io/docs/concepts/overview/components/

[3] *Id.*

[4] https://kubernetes.io/docs/tutorials/kubernetes-basics/update/update-intro/#updating-an-application

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT            - 17 -            Case No. 3:26-cv-00363-TLT

A Pod always runs on a **Node**. A Node is a worker machine in Kubernetes and may be either a virtual or a physical machine, depending on the cluster. Each Node is managed by [5]

A GKE cluster consists of a *control plane* and worker machines called *nodes*. The control plane and nodes make up the Kubernetes cluster orchestration system. GKE Autopilot manages the entire underlying [6]



[7]

**["adding a new version of an application release bundle in a repository server;"]**

14.     Google Kubernetes Engine operates using a method further comprising adding a new version of an application release bundle in a repository server.

15.     For example, users add a new version of an application release bundle by uploading a new container image, which are software bundles, in a repository server located within the container registry.

---

[5] https://kubernetes.io/docs/tutorials/kubernetes-basics/explore/explore-intro/

[6] https://docs.cloud.google.com/kubernetes-engine/docs/concepts/cluster-architecture

[7] https://kubernetes.io/blog/2018/08/03/out-of-the-clouds-onto-the-ground-how-to-make-kubernetes-production-grade-anywhere/#critical-components-in-a-kubernetes-cluster

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 18 -          Case No. 3:26-cv-00363-TLT

> Once you have a running Kubernetes cluster, you can deploy your containerized applications on top of it. To do so, you create a Kubernetes **Deployment**. The Deployment instructs Kubernetes how to create and update instances of your application. Once you've created a Deployment, the Kubernetes control plane schedules the application instances included in that Deployment to run on individual Nodes in the cluster. [8]

> When you create a Deployment, you'll need to specify the container image for your application and the number of replicas that you want to run. You can change that information later by updating your [9]

> # Images
>
> A container image represents binary data that encapsulates an application and all its software dependencies. Container images are executable software bundles that can run standalone and that make very well-defined assumptions about their runtime environment.
>
> You typically create a container image of your application and push it to a registry before referring to it in a Pod. [10]

> As well as providing binary images, a container registry can also serve a container image index. An image index can point to [11]

> If you don't specify a registry hostname, Kubernetes assumes that you mean the Docker public registry. You can change this behavior [12]

---

[8] https://kubernetes.io/docs/tutorials/kubernetes-basics/deploy-app/deploy-intro/#kubernetes-deployments

[9] *Id.*

[10] https://kubernetes.io/docs/concepts/containers/images/

[11] https://kubernetes.io/docs/concepts/containers/images/#multi-architecture-images-with-image-indexes

[12] https://kubernetes.io/docs/concepts/containers/images/#image-names

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT       - 19 -       Case No. 3:26-cv-00363-TLT

**["determining by a discovery services module which of the one or more grid nodes are running an application associated with the added new version of the application release bundle upon adding the new version of the application release bundle in the repository server;"]**

16.    Google Kubernetes Engine operates using a method further comprising determining by a discovery services module which of the one or more grid nodes are running an application associated with the added new version of the application release bundle upon adding the new version of the application release bundle in the repository server.

17.    For example, upon a container image being updated in a Deployment, the Deployment Controller creates new ReplicaSets that determine which of the one or more grid nodes (e.g., Worker nodes) are running an application (e.g., a Pod containing the application) associated

[13] https://oras.land/docs/concepts/reference/

[14] https://kubernetes.io/docs/tasks/configure-pod-container/pull-image-private-registry/#create-a-pod-that-uses-your-secret

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT                - 20 -            Case No. 3:26-cv-00363-TLT

with the added new version. The new ReplicaSets version's ".spec.selector" labels match the previous version's, but the ".spec.template." fields vary, therefore indicating which Pods contain the previous version of the application. Since a Pod's lifetime is spent on a single Worker node, the ReplicaSet therefore determines the node(s) on which the application is running.

> # Deployments
>
> A Deployment manages a set of Pods to run an application workload, usually one that doesn't maintain state.
>
> A *Deployment* provides declarative updates for Pods and ReplicaSets.
>
> You describe a *desired state* in a Deployment, and the Deployment Controller changes the actual state to the desired state at a controlled rate. You can define Deployments to create new ReplicaSets, or to remove existing Deployments and adopt all their resources with new Deployments. [15]

> A ReplicaSet is linked to its Pods via the Pods' metadata.ownerReferences field, which specifies what resource the current object is owned by. All Pods acquired by a ReplicaSet have their owning ReplicaSet's identifying information within their ownerReferences field. It's through this link that the ReplicaSet knows of the state of the Pods it is maintaining and plans accordingly. [16]

---

[15] https://kubernetes.io/docs/tutorials/kubernetes-basics/update/update-intro/

[16] https://kubernetes.io/docs/concepts/workloads/controllers/replicaset/#how-a-replicaset-works

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT                   - 21 -                   Case No. 3:26-cv-00363-TLT

> **Rollover (aka multiple updates in-flight)**
>
> Each time a new Deployment is observed by the Deployment controller, a ReplicaSet is created to bring up the desired Pods. If the Deployment is updated, the existing ReplicaSet that controls Pods whose labels match `.spec.selector` but whose template does not match `.spec.template` is scaled down. Eventually, the new ReplicaSet is scaled to `.spec.replicas` and all old ReplicaSets is scaled to 0. [17]

> relatively ephemeral (rather than durable) entities. Pods are created, assigned a unique ID (UID), and scheduled to run on nodes where they remain until termination (according to restart policy) or deletion. If a [18]

> Kubernetes runs your workload by placing containers into Pods to run on *Nodes*. A node may be a virtual or physical machine, depending on the cluster. Each node is managed by the [19]

**["notifying a client application manager associated with one or more of the determined grid nodes about adding the new version of the application release bundle along with a type of data transfer protocol to use;"]**

18.     Google Kubernetes Engine operates using a method further comprising notifying a client application manager associated with one or more of the determined grid nodes about adding the new version of the application release bundle along with a type of data transfer protocol to use.

19.     For example, when a Deployment is updated with the new version of the application release bundle (e.g., an updated container image), the Deployment Controller creates a new ReplicaSet with an associated PodSpec. The client application manager—the Kubelet, which resides on a Worker node—is notified by the API Server of the new PodSpec, along with the data transfer protocol of the Open Container Initiative Distribution Specification.

---

[17] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#rollover-aka-multiple-updates-in-flight

[18] https://kubernetes.io/docs/concepts/workloads/pods/pod-lifecycle/

[19] https://kubernetes.io/docs/concepts/architecture/nodes/

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT            - 22 -            Case No. 3:26-cv-00363-TLT

Each time a new Deployment is observed by the Deployment controller, a ReplicaSet is created to bring up the desired Pods. If the Deployment is updated, the existing ReplicaSet that controls Pods whose labels match `.spec.selector` but whose template does not match `.spec.template` is scaled down. Eventually, the new ReplicaSet is scaled to `.spec.replicas` and all old ReplicaSets is scaled to 0. [20]

A ReplicaSet is defined with fields, including a selector that specifies how to identify Pods it can acquire, a number of replicas indicating how many Pods it should be maintaining, and a pod template specifying the data of new Pods it should create to meet the number of replicas criteria. A ReplicaSet then fulfills its purpose by creating and deleting Pods as needed to reach the desired number. When a ReplicaSet needs to create new Pods, it uses its Pod template. [21]

The kubelet is the primary "node agent" that runs on each node. It can register the node with the apiserver using one of: the hostname; a flag to override the hostname; or specific logic for a cloud provider.

The kubelet works in terms of a PodSpec. A PodSpec is a YAML or JSON object that describes a pod. The kubelet takes a set of PodSpecs that are provided through various mechanisms (primarily through the apiserver) and ensures that the containers described in those PodSpecs are running and healthy. The kubelet doesn't manage containers which were not created by Kubernetes. [22]

The **Open Container Initiative Distribution Specification** (a.k.a. "OCI Distribution Spec") defines an API protocol to facilitate and standardize the distribution of content. [23]

---

[20] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#rollover-aka-multiple-updates-in-flight

[21] https://kubernetes.io/docs/concepts/workloads/controllers/replicaset/#how-a-replicaset-works

[22] https://kubernetes.io/docs/reference/command-line-tools-reference/kubelet/#synopsis

[23] https://github.com/opencontainers/distribution-spec/blob/main/spec.md

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT           - 23 -           Case No. 3:26-cv-00363-TLT



[**"hot deploying/redeploying the new version of the application release bundle on running one or more application servers in an associated grid node using an appropriate hot deployment plug-in based on the data transfer protocol by a respective one of the client application managers."**]

20.    Google Kubernetes Engine operates using a method further comprising hot deploying/redeploying the new version of the application release bundle on running one or more application servers in an associated grid node using an appropriate hot deployment plug-in based on the data transfer protocol by a respective one of the client application managers.

21.    For example, the client application manager—the Kubelet—reads the new PodSpec provided by the API server and instructs the hot deployment plug-in—the Container Runtime—to download and hot deploy/redeploy the appropriate image from the container registry onto the

---



[24] https://kubernetes.io/blog/2018/08/03/out-of-the-clouds-onto-the-ground-how-to-make-kubernetes-production-grade-anywhere/#critical-components-in-a-kubernetes-cluster

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 24 -          Case No. 3:26-cv-00363-TLT

Worker nodes, which the Container Runtime does in accordance with the Open Container Initiative Distribution Specification data transfer protocol.

## Updating an application

> Rolling updates allow Deployments' update to take place with zero downtime by incrementally updating Pods instances with new ones.

25

Declare the new state of the Pods by updating the PodTemplateSpec of the Deployment. A new ReplicaSet is created, and the Deployment gradually scales it up while scaling down the old ReplicaSet, ensuring Pods are replaced at a controlled rate. Each new ReplicaSet updates the revision of the Deployment.

26

## Rollover (aka multiple updates in-flight)

Each time a new Deployment is observed by the Deployment controller, a ReplicaSet is created to bring up the desired Pods. If the Deployment is updated, the existing ReplicaSet that controls Pods whose labels match `.spec.selector` but whose template does not match `.spec.template` is scaled down. Eventually, the new ReplicaSet is scaled to `.spec.replicas` and all old ReplicaSets is scaled to 0.

27

**Step 2: Kubelet Communicates with the Container Runtime**

- Kubelet retrieves the pod specification from the API Server.
- It instructs the container runtime (Docker, containerd, or CRI-O) to pull the nginx image and start the container.

28

---

[25] https://kubernetes.io/docs/tutorials/kubernetes-basics/update/update-intro/#updating-an-application

[26] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#use-case

[27] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#rollover-aka-multiple-updates-in-flight

[28] https://medium.com/careerbytecode/100days-of-k8s-with-devops-challenge-week-3recap-day-15-day-21-key-takeaways-d3747956643d

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 25 -                Case No. 3:26-cv-00363-TLT

Each container runtime has it own strengths, and many users have asked for Kubernetes to support more runtimes. In the Kubernetes 1.5 release, we are proud to introduce the Container Runtime Interface (CRI) -- a plugin interface which enables kubelet to use a wide variety of container runtimes, without the need to recompile. CRI consists of a protocol buffers and gRPC API, and [29]

Initiative) image. Any OCI-compliant image, regardless of the tool you use to build it, will look the same to Kubernetes. Both containerd and CRI-O know how to pull those images and run them. This is why we have a standard for [30]

The **Open Container Initiative Distribution Specification** (a.k.a. "OCI Distribution Spec") defines an API protocol to facilitate and standardize the distribution of content. [31]

The `.spec.template` field contains the following sub-fields:

- The Pods are labeled `app: nginx` using the `.metadata.labels` field.
- The Pod template's specification, or `.spec` field, indicates that the Pods run one container, `nginx`, which runs the `nginx` Docker Hub image at version 1.14.2.
- Create one container and name it `nginx` using the `.spec.containers[0].name` field. [32]

---

[29] https://kubernetes.io/blog/2016/12/container-runtime-interface-cri-in-kubernetes/

[30] https://kubernetes.io/blog/2020/12/02/dont-panic-kubernetes-and-docker/

[31] https://github.com/opencontainers/distribution-spec/blob/main/spec.md

[32] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#creating-a-deployment

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 26 -          Case No. 3:26-cv-00363-TLT

```
Name:                   nginx-deployment
Namespace:              default
CreationTimestamp:      Thu, 30 Nov 2017 10:56:25 +0000
Labels:                 app=nginx
Annotations:            deployment.kubernetes.io/revision=2
Selector:               app=nginx
Replicas:               3 desired | 3 updated | 3 total | 3 available | 0 unavailable
StrategyType:           RollingUpdate
MinReadySeconds:        0
RollingUpdateStrategy:  25% max unavailable, 25% max surge
Pod Template:
  Labels:  app=nginx
    Containers:
     nginx:
       Image:           nginx:1.16.1
       Port:            80/TCP
       Environment:     <none>
       Mounts:          <none>
     Volumes:           <none>
  Conditions:
     Type           Status  Reason
     ----           ------  ------
     Available      True    MinimumReplicasAvailable
     Progressing    True    NewReplicaSetAvailable
  OldReplicaSets:  <none>
  NewReplicaSet:   nginx-deployment-1564180365 (3/3 replicas created)
  Events:
     Type    Reason            Age   From                   Message
     ----    ------            ----  ----                   -------
     Normal  ScalingReplicaSet 2m    deployment-controller  Scaled up replica set nginx-deployment-2035384211 to 3
     Normal  ScalingReplicaSet 24s   deployment-controller  Scaled up replica set nginx-deployment-1564180365 to 1
     Normal  ScalingReplicaSet 22s   deployment-controller  Scaled down replica set nginx-deployment-2035384211 to 2
     Normal  ScalingReplicaSet 22s   deployment-controller  Scaled up replica set nginx-deployment-1564180365 to 2
     Normal  ScalingReplicaSet 19s   deployment-controller  Scaled down replica set nginx-deployment-2035384211 to 1
     Normal  ScalingReplicaSet 19s   deployment-controller  Scaled up replica set nginx-deployment-1564180365 to 3
     Normal  ScalingReplicaSet 14s   deployment-controller  Scaled down replica set nginx-deployment-2035384211 to 0
```
[33]

> Here you see that when you first created the Deployment, it created a ReplicaSet (nginx-deployment-2035384211) and scaled it up to 3 replicas directly. When you updated the Deployment, it created a new ReplicaSet (nginx-deployment-1564180365) and scaled it up to 1 and waited for it to come up. Then it scaled down the old ReplicaSet to 2 and scaled up the new ReplicaSet to 2 so that at least 3 Pods were available and at most 4 Pods were created at all times. It then continued scaling up and down the new and the old ReplicaSet, with the same rolling update strategy. Finally, you'll have 3 available replicas in the new ReplicaSet, and the old ReplicaSet is scaled down to 0.
> [34]

---

[33] https://kubernetes.io/docs/concepts/workloads/controllers/deployment/#updating-a-deployment

[34] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 27 -              Case No. 3:26-cv-00363-TLT

22.    According to Google's own documentation, Google "use[s] [Google Kubernetes Engine] for several" internal Google services, including Vertex AI and DeepMind.[35,36] On information and belief, those services also include Google Ads and Google Ad Manager.[37]

23.    Google is inducing infringement of the '332 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine in the United States, or to import Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine in or from the United States, without license or authority from Defendants, with knowledge of or willful blindness to the fact that Google's actions will induce others to directly infringe the '332 Patent. Google actively encourages, directs, and controls third parties, including its end users, to make and/or use Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine in an infringing manner, including through Google's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Google has intentionally aided and encouraged third parties, including its end users, to use Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine in the United States in a manner that it knows would infringe or have

---

[35] https://cloud.google.com/blog/products/containers-kubernetes/why-choose-gke-as-your-kubernetes-service

[36] https://blog.google/innovation-and-ai/infrastructure-and-cloud/google-cloud/live-from-google-cloud-next-advancing-every-business-in-the-cloud/

[37] https://medium.com/@YodgorbekKomilo/unveiling-the-system-design-of-google-ads-architecture-scalability-and-reliability-a8f4adeb947d.

a high probability of infringing the '332 Patent, with the specific intent that those performing the acts infringe the '332 Patent.

24.    Google is contributorily infringing the '332 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine for use in infringing the '332 Patent, constituting a material part of the invention, knowing Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine to be especially made or especially adapted for use in infringing the '332 Patent. Google Kubernetes Engine and all Google internal services that use Kubernetes or Google Kubernetes Engine are not staple articles or commodities of commerce suitable for substantial non-infringing use.

25.    As a result of Google's infringement of the '332 Patent, Defendants have been damaged. In addition, Google's infringing acts and practices have caused and are causing immediate and irreparable harm to Defendants. Defendants are entitled to recover for damages sustained as a result of Google's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

26.    Defendants are further informed, and on this basis allege, that Google's infringement of the '332 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Defendants pursuant to 35 U.S.C. §§ 284-285. Google has had knowledge of the '332 Patent and its infringement thereof, including through its knowledge of Defendants' public assertions that others, including Home Depot, infringe the '332 Patent by using Google Kubernetes Engine, *Valtrus Innovations Ltd. v. The Home Depot*, No. 2:25-cv-00081-JRG

(E.D. Tex. Jan. 27, 2025), and yet Google has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Defendants' patent rights.

## SECOND COUNTERCLAIM

### (Infringement of U.S. Patent No. 7,057,509)

27.     Defendants re-allege and incorporate by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

28.     The '509 Patent, entitled "Monitoring an object with identification data and tracking data," was duly and lawfully issued on June 6, 2006. A true and correct copy of the '509 Patent is attached as Exhibit 1.

29.     Defendants own by assignment the entire right, title, and interest in and to the '509 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

30.     Defendants are informed and believe, and on this basis allege, that Google, agents of Google, and/or third parties acting under Google's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '509 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, Google Maps and Google Pixel. Google controls Google Maps and Google Pixel as a whole and obtains benefits from them.

31.     For example, Google Maps and Google Pixel embody every limitation of at least claim 17 of the '509 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

**["17. A method of monitoring an object, said method comprising:"]**

32.     Google Maps and Google Pixel use a method of monitoring an object.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 30 -          Case No. 3:26-cv-00363-TLT

33.    For example, Google Maps' aggregating location analytics system uses a method of monitoring, tracking, and storing device data through Google Maps Timeline, and utilizing said data to provide insights to Google users. Google Pixel uses this method through Google Maps.

# Manage your Google Maps Timeline

Timeline helps you go back in time and remember where you've been by automatically saving your visits and routes to your Google Maps Timeline on each of your signed-in devices. [38]

To make Google experiences more useful for everyone, Timeline data can be used to

- show community trends, such as popular times and transit crowdedness, based on aggregated location data [39]

Timeline data can also help nearby businesses estimate how often ads drive visits to their stores, if you have Web & App Activity turned on. Only anonymous estimates, not personal [40]

**["generating identification data associated with each monitored object located at an identification gateway of a monitored environment, wherein said generating identification data is performed by an identification system;"]**

34.    Google Maps operates using a method further comprising generating identification data associated with each monitored object located at an identification gateway of a monitored environment, wherein said generating identification data is performed by an identification system.

35.    For example, the Google Maps location tracking functionality generates a personal identifier based on user account information for each device being tracked at an identification

---

[38] https://support.google.com/maps/answer/6258979?hl=en&co=GENIE.Platform%3DDesktop

[39] https://policies.google.com/technologies/location-data?hl=en

[40] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 31 -          Case No. 3:26-cv-00363-TLT

gateway, such as a cellular base station or a Wi-Fi access point, that is within the Google Maps monitored environment.

36.     As a further example, Google Pixel uses the above-described method through its use of Google Maps.

> Timeline is turned off by default. If you turn on Timeline, your precise device location is regularly saved, for every eligible mobile device where you're signed in. These device [41]

**["generating tracking data associated with each monitored object located within said monitored environment, wherein said generating tracking data is performed by a tracking system;"]**

37.     Google Maps operates using a method further comprising generating tracking data associated with each monitored object located within said monitored environment, wherein said generating tracking data is performed by a tracking system.

38.     For example, the Google Maps location tracking functionality generates, on a regular basis, tracking data (e.g., location data) of a monitored device within the Google Maps monitored environment.

39.     As a further example, Google Pixel uses the above-described method through its use of Google Maps.

> Your device location may also periodically be used in the background. When Timeline is on, even when Google apps aren't in use, your device's precise location is regularly saved to your device. [42]

---

[41] *Id.*

[42] https://support.google.com/accounts/answer/14200149?hl=en-419

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 32 -          Case No. 3:26-cv-00363-TLT

**["merging and storing said identification data and said tracking data of each monitored object to form monitoring data for each monitored object;"]**

40. Google Maps operates using a method further comprising merging and storing said identification data and said tracking data of each monitored object to form monitoring data for each monitored object.

41. For example, on information and belief, Google Maps' aggregating location analytics system merges the identification and tracking data (e.g., aggregates the personal identifier and location data) for each monitored device, which is then stored by Google Maps in the memory of the device on which it is running.

42. As a further example, Google Pixel uses the above-described method through its use of Google Maps.

**Timeline**

If you turn on Timeline, it will create a personal map on each of your devices that helps you remember places you've been, and routes and trips you've taken.

Timeline is turned off by default. If you turn on Timeline, your precise device location is regularly saved, for every eligible mobile device where you're signed in. These device locations are used to build your Timeline, including when Google apps aren't being used.

To make Google experiences more useful for everyone, Timeline data can be used to

- show community trends, such as popular times and transit crowdedness, based on aggregated location data

- detect and prevent fraud and abuse

- improve and provide Google services, including ads products

[43]

---

[43] https://policies.google.com/technologies/location-data?hl=en

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 33 -          Case No. 3:26-cv-00363-TLT

> # Manage your Timeline data
>
> Timeline ☑ is a Google Account setting that helps you go back in time, and remember where you've been, by automatically saving your visits and routes to a map on each of your signed-in devices. [44]

> When you're signed in with your Google Account, each of your eligible devices will save visits and routes on its own Timeline. You also have the option to store an encrypted [45]

**["comparing new content of said monitoring data of a monitored object with prior content of said monitoring data of said monitored object."]**

43.    Google Maps operates using a method further comprising comparing new content of said monitoring data of a monitored object with prior content of said monitoring data of said monitored object.

44.    For example, Google Maps' aggregating location analytics system compares the aggregated data for a tracked device to determine when it arrived at a location, when it departed, and how often it visits said location. As a further example, the aggregating location analytics system compares the aggregated data for a tracked device to determine if an advertisement delivered to a device later drove the device user to physically visit the respective business.

45.    As a further example, Google Pixel uses the above-described method through its use of Google Maps.

---

[44] https://support.google.com/accounts/answer/14200149?hl=en-419

[45] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT          - 34 -          Case No. 3:26-cv-00363-TLT

> To make Google experiences more useful for everyone, Timeline data can be used to
>
> • show community trends, such as popular times and transit crowdedness, based on aggregated location data [46]

> Timeline data can also help nearby businesses estimate how often ads drive visits to their stores, if you have Web & App Activity turned on. Only anonymous estimates, not personal [47]

46.    Google is inducing infringement of the '509 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell Google Maps and Google Pixel in the United States, or to import Google Maps and Google Pixel into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Google Maps and Google Pixel in or from the United States, without license or authority from Defendants, with knowledge of or willful blindness to the fact that Google's actions will induce others to directly infringe the '509 Patent. Google actively encourages, directs, and controls third parties, including its end users, to make and/or use Google Maps and Google Pixel in an infringing manner, including through Google's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Google has intentionally aided and encouraged third parties, including its end users, to use Google Maps and Google Pixel in the United States in a manner that it knows would infringe or have a high probability of infringing the '509 Patent, with the specific intent that those performing the acts infringe the '509 Patent.

47.    Google is contributorily infringing the '509 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C.

---

[46] https://policies.google.com/technologies/location-data?hl=en

[47] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 35 -                    Case No. 3:26-cv-00363-TLT

§ 271(f)(2), by supplying or causing to be supplied in or from the United States, Google Maps and Google Pixel for use in infringing the '509 Patent, constituting a material part of the invention, knowing Google Maps and Google Pixel to be especially made or especially adapted for use in infringing the '509 Patent. Google Maps and Google Pixel are not staple articles or commodities of commerce suitable for substantial non-infringing use.

48.    As a result of Google's infringement of the '509 Patent, Defendants have been damaged. In addition, Google's infringing acts and practices have caused and are causing immediate and irreparable harm to Defendants. Defendants are entitled to recover for damages sustained as a result of Google's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

49.    Defendants are further informed, and on this basis allege, that Google's infringement of the '509 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Defendants pursuant to 35 U.S.C. §§ 284-285. As noted above, Google has had knowledge of the '509 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Defendants' patent rights.

**THIRD COUNTERCLAIM**

**(Infringement of U.S. Patent No. 8,379,538)**

50.    Defendants re-allege and incorporate by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

51.    The '538 Patent, entitled "Model-driven monitoring architecture," was duly and lawfully issued on February 19, 2013. A true and correct copy of the '538 Patent is attached to the Complaint as Exhibit 1. *See* Dkt. 1, Ex. 1.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 36 -                    Case No. 3:26-cv-00363-TLT

52.    Defendants own by assignment the entire right, title, and interest in and to the '538 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

53.    Defendants are informed and believe, and on this basis allege, that Google, agents of Google, and/or third parties acting under Google's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '538 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel. Google controls Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel as a whole and obtains benefits from them.

54.    For example, Google Kubernetes Engine embodies every limitation of at least claim 7 of the '538 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

**["7. A method comprising:"]**

55.    Google Kubernetes Engine uses a method. For example, Google Kubernetes Engine uses a method for Horizontal Pod Autoscaling to scale workload resources to match demand.

> The Horizontal Pod Autoscaler changes the shape of your Kubernetes workload by automatically increasing or decreasing the number of Pods in response to the workload's CPU or memory consumption, or in response to custom metrics reported from within Kubernetes or external metrics from sources outside of your cluster. [48]

**["providing a machine-readable monitoring model that defines configuration of a monitoring environment;"]**

---

[48] https://docs.cloud.google.com/kubernetes-engine/docs/concepts/horizontalpodautoscaler

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT             - 37 -             Case No. 3:26-cv-00363-TLT

56.    Google Kubernetes Engine operates using a method further comprising providing a machine-readable monitoring model that defines configuration of a monitoring environment.

57.    For example, a machine-readable monitoring model—the HorizontalPodAutoscaler ("HPA") functionality—defines the configuration of the Kubernetes autoscaling monitoring environment through a metric model containing parameters for memory and CPU usage, or other custom metrics.



49

## Support for resource metrics

Any HPA target can be scaled based on the resource usage of the pods in the scaling target. When defining the pod specification the resource requests like `cpu` and `memory` should be specified. This is used to determine the resource utilization and used by the HPA controller to scale the target up or down. To use resource utilization based scaling specify a metric source like this:

50

---

[49] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#how-does-a-horizontalpodautoscaler-work

[50] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#support-for-resource-metrics

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 38 -                Case No. 3:26-cv-00363-TLT

## Scaling on custom metrics

ⓘ **FEATURE STATE:** Kubernetes v1.23 [stable]

(the `autoscaling/v2beta2` API version previously provided this ability as a beta feature)

Provided that you use the `autoscaling/v2` API version, you can configure a HorizontalPodAutoscaler to scale based on a custom metric (that is not built in to Kubernetes or any Kubernetes component).The HorizontalPodAutoscaler controller then queries for these custom metrics from the Kubernetes API.

[51]

**[“responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change;”]**

58.    Google Kubernetes Engine operates using a method further comprising, responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change.

59.    For example, responsive to an increase or decrease in the ratio between the desired and current CPU or memory usage (or other custom metric), the HPA Controller updates the Deployment's scale subresource.

Once during each period, the controller manager queries the resource utilization against the metrics specified in each HorizontalPodAutoscaler definition. The controller manager [52]

For per-pod resource metrics (like CPU), the controller fetches the metrics from the resource metrics API for each Pod targeted by the HorizontalPodAutoscaler.Then, if a target utilization value is set, the controller calculates the utilization value as a percentage of the equivalentresource request on the containers in each Pod. If a target raw value is set, the raw metric values are used directly.The controller then [53]

---

[51] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#scaling-on-custom-metrics

[52] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#how-does-a-horizontalpodautoscaler-work

[53] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                          - 39 -                    Case No. 3:26-cv-00363-TLT

From the most basic perspective, the HorizontalPodAutoscaler controller operates on the ratio between desired metric value and current metric value:

$$desiredReplicas = ceil \left[ currentReplicas \times \frac{currentMetricValue}{desiredMetricValue} \right]$$

[54]

## Tolerance

ⓘ **FEATURE STATE:** Kubernetes v1.35 [beta](enabled by default)

The `tolerance` field configures a threshold for metric variations, preventing the autoscaler from scaling for changes below that value.

This tolerance is defined as the amount of variation around the desired metric value under which no scaling will occur. For example, consider a HorizontalPodAutoscaler configured with a target memory consumption of 100MiB and a scale-up tolerance of 5%:

[55]

The HorizontalPodAutoscaler controller accesses corresponding workload resources that support scaling (such as Deployments and StatefulSet). These resources each have a subresource named `scale`, an interface that allows you to dynamically set the number of replicas and examine each of their current states.For general information about subresources in the Kubernetes API, seeKubernetes API Concepts.

[56]

## Autoscaling during rolling update

Kubernetes lets you perform a rolling update on a Deployment. In that case, the Deployment manages the underlying ReplicaSets for you. When you configure autoscaling for a Deployment, you bind a HorizontalPodAutoscaler to a single Deployment. The HorizontalPodAutoscaler manages the `replicas` field of the Deployment. The deployment controller is responsible for setting the `replicas` of the underlying ReplicaSets so that they add up to a suitable number during the rollout and also afterwards.

[57]

---

[54] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#algorithm-details

[55] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#tolerance

[56] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#how-does-a-horizontalpodautoscaler-work

[57] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#autoscaling-during-rolling-update

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 40 -                    Case No. 3:26-cv-00363-TLT

**[“an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration.”]**

60.    Google Kubernetes Engine operates using a method further comprising an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration.

61.    For example, the Deployment Controller, which is an element of the Kubernetes autoscaling environment, reads the HPA model's update to the Deployment's scale subresource and autonomously adapts its operation to add or remove replicas of the underlying ReplicaSets so as to increase or decrease the number of Pods deployed.

## Autoscaling during rolling update

Kubernetes lets you perform a rolling update on a Deployment. In that case, the Deployment manages the underlying ReplicaSets for you.When you configure autoscaling for a Deployment, you bind a HorizontalPodAutoscaler to a single Deployment. The HorizontalPodAutoscaler manages the `replicas` field of the Deployment. The deployment controller is responsible for setting the `replicas` of the underlying ReplicaSets so that they add up to a suitable number during the rollout and also afterwards.

If you perform a rolling update of a StatefulSet that has an autoscaled number of replicas, the StatefulSet directly manages its set of Pods (there is no intermediate resource similar to ReplicaSet). [58]

Roughly speaking, the HPA controller will increase and decrease the number of replicas (by updating the Deployment) to maintain an average CPU utilization across all Pods of 50%.The Deployment then updates the ReplicaSet - this is part of how all Deployments work in Kubernetes -and then the ReplicaSet either adds or removes Pods based on the change to its `.spec`. [59]

---

[58] https://kubernetes.io/docs/concepts/workloads/autoscaling/horizontal-pod-autoscale/#autoscaling-during-rolling-update

[59] https://kubernetes.io/docs/tasks/run-application/horizontal-pod-autoscale-walkthrough/#create-horizontal-pod-autoscaler

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 41 -              Case No. 3:26-cv-00363-TLT

62.    According to Google's own documentation, Google "use[s] [Google Kubernetes Engine] for several" internal Google services, including Vertex AI and DeepMind.[60,61]  On information and belief, those services also include Google Ads and Google Ad Manager.[62]

63.    In addition, Google Maps and Google Pixel embody every limitation of at least claim 7 of the '538 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

**["7. A method comprising:"]**

64.    Google Maps and Google Pixel use a method. For example, Google Maps uses a method for sharing location on a smartphone, and Google Pixel uses a method for sharing location through Google Maps.

---

## How to track someone on Google Maps

**1.** Start Google Maps on your iPhone or Android.

**2.** Tap your account avatar at the top right of the screen. In the pop-up menu, tap "Location sharing."

**3.** You'll see a list of everyone who is currently sharing their location with you at the bottom of the screen. To see someone's precise location, tap the entry and the map will zoom into their position.

[63]

---

[60] https://cloud.google.com/blog/products/containers-kubernetes/why-choose-gke-as-your-kubernetes-service

[61] https://blog.google/innovation-and-ai/infrastructure-and-cloud/google-cloud/live-from-google-cloud-next-advancing-every-business-in-the-cloud/

[62] https://medium.com/@YodgorbekKomilo/unveiling-the-system-design-of-google-ads-architecture-scalability-and-reliability-a8f4adeb947d.

[63] https://www.businessinsider.com/reference/how-to-track-someone-on-google-maps

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT             - 42 -             Case No. 3:26-cv-00363-TLT

[**"providing a machine-readable monitoring model that defines configuration of a monitoring environment;"**]

65.    Google Maps and Google Pixel operate using a method further comprising providing a machine-readable monitoring model that defines configuration of a monitoring environment.

66.    For example, Google Maps' Android or iOS/MacOS device-readable location tracking functionality defines the metric model that includes location tracking data of the Google Maps environment.

67.    As a further example, Google Pixel uses the above-described method through its use of Google Maps.

---

[64] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT            - 43 -            Case No. 3:26-cv-00363-TLT

**How to track someone on Google Maps**

**1.** Start Google Maps on your iPhone or Android.

**2.** Tap your account avatar at the top right of the screen. In the pop-up menu, tap "Location sharing."

**3.** You'll see a list of everyone who is currently sharing their location with you at the bottom of the screen. To see someone's precise location, tap the entry and the map will zoom into their position. [65]

[66]

**["responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change;"]**

68.     Google Maps and Google Pixel operate using a method further comprising, responsive to a change occurring in said monitoring environment's configuration, said machine-readable monitoring model updating to reflect said change.

---

[65] *Id.*

[66] https://www.google.com/maps/@34.0310106,-118.3860425,11z?authuser=0&entry=ttu&g_ep=EgoyMDI2MDMwOS4wIKXMDSoASAFQAw%3D%3D

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 44 -          Case No. 3:26-cv-00363-TLT

69.     For example, responsive to a change in the location tracking data in the Google Maps environment, such as inclusion or exclusion of the location data on a person turning on or off location sharing, Google Maps' location tracking functionality updates the list of tracked people for location data gathering and display.

70.     As a further example, Google Pixel uses the above-described method through its use of Google Maps.

Stop sharing your location with a specific person

1. Open your device's Settings app.
2. Tap **Location** > **Location services** > **Google Location Sharing**.
3. Tap the list of people you share your location with.
4. Find the person you want to stop sharing with. Next to the person's name, tap **Stop**. [67]

Pause Location Sharing

You can pause any updates to your location on your device as long as the setting is turned off.

1. Open your device's Settings app.
2. Tap **Location** > **Location services** > **Google Location Sharing**.
3. Turn off **Use Location Sharing**.

**Tips:**

- This won't stop any of your shares, but they won't be updated with your real-time location until you turn this setting on.
- You can use other location services on your device, such as Google Maps, while this setting is turned off.
- If anyone else has an account on the device, it won't affect any shares they have. Each account on a device can manage their location shares separately.
- If you haven't shared your location with any other users, you can't turn this setting on or off. It shows as off by default. [68]

**["an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration."]**

---

[67] https://support.google.com/accounts/answer/9363497?hl=en&co=GENIE.Platform%3DAndroid&oco=1

[68] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT          - 45 -          Case No. 3:26-cv-00363-TLT

71.    Google Maps and Google Pixel operate using a method further comprising an element of said monitoring environment reading said machine-readable model and autonomously adapting its operation to the changed configuration.

72.    For example, an element of the Google Maps environment reads the Android or iOS/MacOS device-readable location tracking functionality and autonomously adapts to display locations for only those who are currently sharing their locations.

73.    As a further example, Google Pixel uses the above-described method through its use of Google Maps.



74.    Google is inducing infringement of the '538 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel in the United States, or to import Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel in or from the United States, without license or authority from Defendants, with knowledge of or willful blindness to the fact that Google's actions will induce others to directly infringe the '538 Patent. Google actively encourages, directs, and controls third parties, including its end users, to make and/or use Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel in an infringing manner, including through Google's website, advertisements, documentation/instructional material, customer support, application and feature

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 47 -                    Case No. 3:26-cv-00363-TLT

descriptions, and in-application instructions. Google has intentionally aided and encouraged third parties, including its end users, to use Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel in the United States in a manner that it knows would infringe or have a high probability of infringing the '538 Patent, with the specific intent that those performing the acts infringe the '538 Patent.

75.    Google is contributorily infringing the '538 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel for use in infringing the '538 Patent, constituting a material part of the invention, knowing Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel to be especially made or especially adapted for use in infringing the '538 Patent. Google Kubernetes Engine, all Google internal services that use Kubernetes or Google Kubernetes Engine, Google Maps, and Google Pixel are not staple articles or commodities of commerce suitable for substantial non-infringing use.

76.    As a result of Google's infringement of the '538 Patent, Defendants have been damaged. In addition, Google's infringing acts and practices have caused and are causing immediate and irreparable harm to Defendants. Defendants are entitled to recover for damages sustained as a result of Google's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

77.    Defendants are further informed, and on this basis allege, that Google's infringement of the '538 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Defendants pursuant to 35 U.S.C. §§ 284-285. On May 13, 2021,

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 48 -                    Case No. 3:26-cv-00363-TLT

Defendants provided Google with a letter informing Google of the '538 Patent and its infringement thereof, and yet Google has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Defendants' patent rights.

## FOURTH COUNTERCLAIM

### (Infringement of U.S. Patent No. 7,904,686)

78.     Defendants re-allege and incorporate by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

79.     The '686 Patent, entitled "Data Security for Use With a File System," was duly and lawfully issued on March 8, 2011. A true and correct copy of the '686 Patent is attached to the Complaint as Exhibit 5. *See* Dkt. 1, Ex. 5.

80.     Defendants own by assignment the entire right, title, and interest in and to the '686 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

81.     Defendants are informed and believe, and on this basis allege, that Google, agents of Google, and/or third parties acting under Google's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '686 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, Google's Managed Apache Hadoop with Google Dataproc ("Google Dataproc"). Google controls Google Dataproc as a whole and obtains benefits from it.

82.     For example, Google Dataproc embodies every limitation of at least claim 1 of the '686 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 49 -                    Case No. 3:26-cv-00363-TLT

**["1. A method of providing data security for use with a file system, the method comprising:"]**

83.     Google Dataproc uses a method of providing data security for use with a file system. For example, Google Dataproc integrates and uses the Apache Hadoop Distributed File System (HDFS) for storage:

84.     Apache Hadoop framework provides security features to protect data present in Hadoop clusters. Hadoop uses the HDFS file system to store data. HDFS comprises a name node and multiple data nodes:

---

[69] https://docs.cloud.google.com/dataproc/docs/concepts/dataproc-hdfs

[70] http://hadoop.apache.org/docs/stable/hadoop-project-dist/hadoop-hdfs/HdfsDesign.html

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 50 -                Case No. 3:26-cv-00363-TLT

**NameNode and DataNodes**

HDFS has a master/slave architecture. An HDFS cluster consists of a single NameNode, a master server that manages the file system namespace and regulates access to files by clients. In addition, there are a number of DataNodes, usually one per node in the cluster, which manage storage attached to the nodes that they run on. HDFS exposes a file system namespace and allows user data to be stored in files. Internally, a file is split into one or more blocks and these blocks are stored in a set of DataNodes. The NameNode executes file system namespace operations like opening, closing, and renaming files and directories. It also determines the mapping of blocks to DataNodes. The DataNodes are responsible for serving read and write requests from the file system's clients. The DataNodes also perform block creation, deletion, and replication upon instruction from the NameNode.

[71]

**The Communication Protocols**

All HDFS communication protocols are layered on top of the TCP/IP protocol. A client establishes a connection to a configurable TCP port on the NameNode machine. It talks the ClientProtocol with the NameNode. The DataNodes talk to the NameNode using the DataNode Protocol. A Remote Procedure Call (RPC) abstraction wraps both the Client Protocol and the DataNode Protocol. By design, the NameNode never initiates any RPCs. Instead, it only responds to RPC requests issued by DataNodes or clients.

[72]

**[“applying a mapping function to data block numbers that are associated with a file, wherein the data block numbers are contained in an index node associated with said file;”]**

85.     Google Dataproc performs the step of applying a mapping function to data block numbers that are associated with a file wherein the data block numbers are contained in an index node associated with said file.

86.     For example, NameNode performs various operation such as opening, closing of files and mapping data block locations (data block number). Mapping (mapping function) is the process of determining which data block is stored at which location:

**NameNode and DataNodes**

HDFS has a master/slave architecture. An HDFS cluster consists of a single NameNode, a master server that manages the file system namespace and regulates access to files by clients. In addition, there are a number of DataNodes, usually one per node in the cluster, which manage storage attached to the nodes that they run on. HDFS exposes a file system namespace and allows user data to be stored in files. Internally, a file is split into one or more blocks and these blocks are stored in a set of DataNodes. The NameNode executes file system namespace operations like opening, closing, and renaming files and directories. It also determines the mapping of blocks to DataNodes. The DataNodes are responsible for serving read and write requests from the file system's clients. The DataNodes also perform block creation, deletion, and replication upon instruction from the NameNode.

[73]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                      - 51 -                      Case No. 3:26-cv-00363-TLT

> **The Persistence of File System Metadata**
>
> The HDFS namespace is stored by the NameNode. The NameNode uses a transaction log called the EditLog to persistently record every change that occurs to file system metadata. For example, creating a new file in HDFS causes the NameNode to insert a record into the EditLog indicating this. Similarly, changing the replication factor of a file causes a new record to be inserted into the EditLog. The NameNode uses a file in its local host OS file system to store the EditLog. The entire file system namespace, including the mapping of blocks to files and file system properties, is stored in a file called the FsImage. The FsImage is stored as a file in the NameNode's local file system too.
>
> The NameNode keeps an image of the entire file system namespace and file Blockmap in memory. When the NameNode starts up, or a checkpoint is triggered by a configurable threshold, it reads the FsImage and EditLog from disk, applies all the transactions from the EditLog to the in-memory representation of the FsImage, and flushes out this new version into a new FsImage on disk. It can then truncate the old EditLog because its transactions have been applied to the persistent FsImage. This process is called a checkpoint. The purpose of a checkpoint is to make sure that HDFS has a consistent view of the file system metadata by taking a snapshot of the file system metadata and saving it to FsImage. Even though it is efficient to read a FsImage, it is not efficient to make incremental edits directly to a FsImage. Instead of modifying FsImage for each edit, we persist the edits in the Editlog. During the checkpoint the changes from Editlog are applied to the FsImage. A checkpoint can be triggered at a given time interval (dfs.namenode.checkpoint.period) expressed in seconds, or after a given number of filesystem transactions have accumulated (dfs.namenode.checkpoint.txns). If both of these properties are set, the first threshold to be reached triggers a checkpoint. [74]

87. Data blocks are associated with a file. The data block locations are stored in the Name node's (index node) memory:

> The DataNode stores HDFS data in files in its local file system. The DataNode has no knowledge about HDFS files. It stores each block of HDFS data in a separate file in its local file system. The DataNode does not create all files in the same directory. Instead, it uses a heuristic to determine the optimal number of files per directory and creates subdirectories appropriately. It is not optimal to create all local files in the same directory because the local file system might not be able to efficiently support a huge number of files in a single directory. When a DataNode starts up, it scans through its local file system, generates a list of all HDFS data blocks that correspond to each of these local files, and sends this report to the NameNode. The report is called the *Blockreport*. [75]

**["obtaining mapped data block numbers after applying the mapping function, wherein the mapped data block numbers are addresses of data of the file in a storage device."]**

88. Google Dataproc performs the step of obtaining mapped data block numbers after applying the mapping function, wherein the mapped data block numbers are addresses of data of the file in a storage device.

89. For example, Name Node determines 'the addresses of the data nodes' (mapped data block numbers) on which the data block is stored. Data nodes (storage device) store the data blocks of a file:

---

[74] *Id.*

[75] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT          - 52 -          Case No. 3:26-cv-00363-TLT

**NameNode and DataNodes**

HDFS has a master/slave architecture. An HDFS cluster consists of a single NameNode, a master server that manages the file system namespace and regulates access to files by clients. In addition, there are a number of DataNodes, usually one per node in the cluster, which manage storage attached to the nodes that they run on. HDFS exposes a file system namespace and allows user data to be stored in files. Internally, a file is split into one or more blocks and these blocks are stored in a set of DataNodes. The NameNode executes file system namespace operations like opening, closing, and renaming files and directories. It also determines the mapping of blocks to DataNodes. The DataNodes are responsible for serving read and write requests from the file system's clients. The DataNodes also perform block creation, deletion, and replication upon instruction from the NameNode. [76]



90.      Google is inducing infringement of the '686 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell Google Dataproc in the United States, or to import Google Dataproc into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Google Dataproc in or from the United States, without license or authority from Defendants, with knowledge of or willful blindness to the fact that Google's actions will induce others to directly infringe the '686 Patent. Google actively encourages, directs, and controls third parties, including its end users, to make and/or use Google Dataproc in an infringing manner, including through Google's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Google has intentionally aided and encouraged third parties, including its end users, to use Google Dataproc in the United States in a manner that it

---

[76] *Id.*

[77] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 53 -                    Case No. 3:26-cv-00363-TLT

knows would infringe or have a high probability of infringing the '686 Patent, with the specific intent that those performing the acts infringe the '686 Patent.

91. Google is contributorily infringing the '686 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Google Dataproc for use in infringing the '686 Patent, constituting a material part of the invention, knowing Google Dataproc to be especially made or especially adapted for use in infringing the '686 Patent. Google Dataproc is not a staple article or commodity of commerce suitable for substantial non-infringing use.

92. As a result of Google's infringement of the '686 Patent, Defendants have been damaged. In addition, Google's infringing acts and practices have caused and are causing immediate and irreparable harm to Defendants. Defendants are entitled to recover for damages sustained as a result of Google's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

93. Defendants are further informed, and on this basis allege, that Google's infringement of the '686 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Defendants pursuant to 35 U.S.C. §§ 284-285. As noted above, Google has had knowledge of the '686 Patent and its infringement thereof, including through its awareness of Defendants' action against NetApp for its use of Apache Hadoop, *Valtrus Innovations Ltd. v. NetApp, Inc.*, No. 2:25-cv-00517 (E.D. Tex. May 9, 2025), and yet Google has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Defendants' patent rights.

**FIFTH COUNTERCLAIM**

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 54 -                    Case No. 3:26-cv-00363-TLT

**(Infringement of U.S. Patent No. 7,936,738)**

94.     Defendants re-allege and incorporate by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

95.     The '738 Patent, entitled "Fault Tolerant Systems," was duly and lawfully issued on May 3, 2011. The '738 Patent is entitled to a priority date of July 6, 2004. A true and correct copy of the '738 Patent is attached to the Complaint as Exhibit 7. *See* Dkt. 1, Ex. 7.

96.     Defendants own by assignment the entire right, title, and interest in and to the '738 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

97.     Defendants are informed and believe, and on this basis allege, that Google, agents of Google, and/or third parties acting under Google's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '738 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, Google's Managed Service for Apache Kafka ("Kafka Service") and similar services such as Google's Pub/Sub Messaging Service ("Pub/Sub") and other similarly operated services like Google Cloud Workflow. Google controls the Kafka Service as a whole and obtains benefits from it and similar services such as Pub/Sub, which on information and belief functions in a substantially similar manner to Kafka. Google also uses Pub/Sub for internal services such as Google Ads, Search, and Gmail.[78]

---

[78] https://docs.cloud.google.com/pubsub/architecture ("Pub/Sub is an asynchronous messaging service designed to be highly reliable and scalable. The service is built on a core Google infrastructure component that many Google products have relied upon for over a decade. ***Google products including Ads, Search and Gmail use this infrastructure to send over 500 million messages per second, totaling over 1TB/s of dat***a. This article describes the salient design features that enables Pub/Sub to provide this type of scale reliably.")

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 55 -                    Case No. 3:26-cv-00363-TLT

98.     For example, Google's Kafka Service embodies every limitation of at least claim 1 of the '738 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

**["1. A method of storing context information in an outgoing message sent from a node including a computing device using a protocol stack having at least one layer, comprising:"]**

99.     Google's Managed Service for Apache Kafka uses a method of storing context information in an outgoing message sent from a node including a computing device using a protocol stack having at least one layer.

100.     Google's Managed Service for Apache Kafka helps users run Apache Kafka clusters, and runs the same software as Apache Kafka:

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT            - 56 -            Case No. 3:26-cv-00363-TLT

101.    Kafka stores context information in outgoing messages sent from a node including a computing device using a protocol stack having at least one layer. As a non-limiting example, Kafka stores context information such as topic name and partition index in outgoing Kafka messages:

---

[79] https://docs.cloud.google.com/managed-service-for-apache-kafka/docs/overview

[80] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT              - 57 -              Case No. 3:26-cv-00363-TLT

## Main Concepts and Terminology

An **event** records the fact that "something happened" in the world or in your business. It is also called record or message in the documentation. When you read or write data to Kafka, you do this in the form of events. Conceptually, an event has a key, value, timestamp, and optional metadata headers. Here's an example event:

- Event key: "Alice"
- Event value: "Made a payment of $200 to Bob"
- Event timestamp: "Jun. 25, 2020 at 2:06 p.m."

**Producers** are those client applications that publish (write) events to Kafka, and **consumers** are those that subscribe to (read and process) these events. In Kafka, producers and consumers are fully decoupled and agnostic of each other, which is a key design element to achieve the high scalability that Kafka is known for. For example, producers never need to wait for consumers. Kafka provides various guarantees such as the ability to process events exactly-once.

Events are organized and durably stored in **topics**. Very simplified, a topic is similar to a folder in a filesystem, and the events are the files in that folder. An example topic name could be "payments". Topics in Kafka are always multi-producer and multi-subscriber: a topic can have zero, one, or many producers that write events to it, as well as zero, one, or many consumers that subscribe to these events. Events in a topic can be read as often as needed—unlike traditional messaging systems, events are not deleted after consumption. Instead, you define for how long Kafka should retain your events through a per-topic configuration setting, after which old events will be discarded. Kafka's performance is effectively constant with respect to data size, so storing data for a long time is perfectly fine.

Topics are **partitioned** , meaning a topic is spread over a number of "buckets" located on different Kafka brokers. This distributed placement of your data is very important for scalability because it allows client applications to both read and write the data from/to many brokers at the same time. When a new event is published to a topic, it is actually appended to one of the topic's partitions. Events with the same event key (e.g., a customer or vehicle ID) are written to the same partition, and Kafka guarantees that any consumer of a given topic-partition will always read that partition's events in exactly the same order as they were written.

[81]

Produce API (Key: 0):

**Requests:**

```
Produce Request (Version: 3) => transactional_id acks timeout_ms [topic_data]
  transactional_id => NULLABLE_STRING
  acks => INT16
  timeout_ms => INT32
  topic_data => name [partition_data]
    name => STRING
    partition_data => index records
      index => INT32
      records => RECORDS
```

**Request header version:** 1

| FIELD | DESCRIPTION |
|---|---|
| transactional_id | The transactional ID, or null if the producer is not transactional. |
| acks | The number of acknowledgments the producer requires the leader to have received before considering a request complete. Allowed values: 0 for no acknowledgments, 1 for only the leader and -1 for the full ISR. |
| timeout_ms | The timeout to await a response in milliseconds. |
| topic_data | Each topic to produce to. |
| name | The topic name. |
| partition_data | Each partition to produce to. |
| index | The partition index. |
| records | The record data to be produced. |

[82]

---

[81] https://kafka.apache.org/42/getting-started/introduction/

[82] https://kafka.apache.org/42/design/protocol/#the-messages

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 58 -                    Case No. 3:26-cv-00363-TLT

102.    The outgoing Kafka messages are sent from a node including a computing device using a protocol stack having at least one layer (e.g., the stack used with Kafka, which may, for example, include adapter, transport (TCP), and messaging layers):

### How does Kafka work in a nutshell?

Kafka is a distributed system consisting of **servers** and **clients** that communicate via a high-performance TCP network protocol. It can be deployed on bare-metal hardware, virtual machines, and containers in on-premise as well as cloud environments.

**Servers** : Kafka is run as a cluster of one or more servers that can span multiple datacenters or cloud regions. Some of these servers form the storage layer, called the brokers. Other servers run Kafka Connect to continuously import and export data as event streams to integrate Kafka with your existing systems such as relational databases as well as other Kafka clusters. To let you implement mission-critical use cases, a Kafka cluster is highly scalable and fault-tolerant: if any of its servers fails, the other servers will take over their work to ensure continuous operations without any data loss.

**Clients** : They allow you to write distributed applications and microservices that read, write, and process streams of events in parallel, at scale, and in a fault-tolerant manner even in the case of network problems or machine failures. Kafka ships with some such clients included, which are augmented by dozens of clients provided by the Kafka community: clients are available for Java and Scala including the higher-level Kafka Streams library, for Go, Python, C/C++, and many other programming languages as well as REST APIs.

[83]

103.    Google's Pub/Sub similarly uses a method of storing context information in an outgoing message sent from a node including a computing device using a protocol stack having at least one layer:

---

[83] https://kafka.apache.org/protocol; https://kafka.apache.org/42/getting-started/introduction/

84

Figure 2 *A message flows from a publisher client to a subscriber client through Pub/Sub.*

85

---

[84] https://docs.cloud.google.com/pubsub/docs/overview

[85] https://docs.cloud.google.com/pubsub/docs/publish-message-overview

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                 - 60 -              Case No. 3:26-cv-00363-TLT

104.    As a non-limiting example, Pub/Sub stores context information such as topic name and attributes in outgoing messages:

### Use attributes to publish a message

You can embed custom attributes as metadata in Pub/Sub messages. Attributes are used to provide additional information about the message, such as its priority, origin, or destination. Attributes can also be used to filter messages on the subscription.

Follow these guidelines for using attributes in your messages:

- You can have at most 100 attributes per message.
- Attribute keys and values must be string types. There is no required encoding.
- Attribute keys must not start with `goog` and must not exceed 256 bytes.
- Attribute values must not exceed 1024 bytes.

The message schema can be represented as follows:

```
{
  "data": string,
  "attributes": {
    string: string,
    ...
  },
  "messageId": string,
  "publishTime": string,
  "orderingKey": string
}
```

For publish-side duplicates, it's possible to see different `publishTime` values for the same client-side original message, even with the same `messageId`.

The `PubsubMessage` JSON schema is published as part of the REST and RPC documentation. You can use custom attributes for event timestamps. [86]

---

[86] https://docs.cloud.google.com/pubsub/docs/publisher

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 61 -              Case No. 3:26-cv-00363-TLT



The following samples demonstrate how to publish a message with attributes to a topic.

```
Console    gcloud    C++    C#    Go    Java    Node.js    Python    Ruby
```

Before trying this sample, follow the Python setup instructions in Quickstart: Using Client Libraries. For more information, see the Pub/Sub Python API reference documentation.

```python
from google.cloud import pubsub_v1

# TODO(developer)
# project_id = "your-project-id"
# topic_id = "your-topic-id"

publisher = pubsub_v1.PublisherClient()
topic_path = publisher.topic_path(project_id, topic_id)

for n in range(1, 10):
    data_str = f"Message number {n}"
    # Data must be a bytestring
    data = data_str.encode("utf-8")
    # Add two attributes, origin and username, to the message
    future = publisher.publish(
        topic_path, data, origin="python-sample", username="gcp"
    )
    print(future.result())

print(f"Published messages with custom attributes to {topic_path}.")
```

[87]

105.    The outgoing Pub/Sub messages are sent from a node including a computing device using a protocol stack having at least one layer (e.g., the stack used with Pub/Sub, which may, for example, include application, transport, and messaging layers):

[88]

---

[87] *Id.*

[88] https://www.youtube.com/watch?v=MjEam95VLiI&t=1s

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 62 -              Case No. 3:26-cv-00363-TLT

**["providing, by the computing device, the outgoing message from an application to a layer of the protocol stack, the outgoing message is destined for an application on a destination node;"]**

106.    Google's Managed Service for Apache Kafka performs the step of providing, by the computing device, the outgoing message from an application to a layer of the protocol stack, the outgoing message is destined for an application on a destination node.

107.    As a non-limiting example, Google's Managed Kafka Service provides the outgoing message from an application (e.g., a client VM or Kafka Connect) to a layer of the protocol stack used with Kafka. As one example, Google explains below how to configure a client VM application and produce messages to a Managed Kafka Service cluster:

Home > Documentation > Data analytics > Google Cloud Managed Service for Apache Kafka > Guides    Was this helpful? 👍 👎

# Produce and consume messages with the Kafka command-line tools 🔖 ▾

Send feedback

Learn how to use the Kafka command-line tools to connect to a Managed Service for Apache Kafka cluster, produce messages, and consume messages.

## Before you begin

Before you start this tutorial, create a new Managed Service for Apache Kafka cluster. If you already have a cluster, you can skip this step.

➕ How to create a cluster

## Required roles

To get the permissions that you need to create and configure a client VM, ask your administrator to grant you the following IAM roles on the project:

- Compute Instance Admin (v1) ( `roles/compute.instanceAdmin.v1` )
- Project IAM Admin ( `roles/resourcemanager.projectIamAdmin` )
- Role Viewer ( `roles/iam.roleViewer` )
- Service Account User ( `roles/iam.serviceAccountUser` )

For more information about granting roles, see Manage access to projects, folders, and organizations.

You might also be able to get the required permissions through custom roles or other predefined roles.

[89]

---

[89] https://docs.cloud.google.com/managed-service-for-apache-kafka/docs/quickstart

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 63 -                    Case No. 3:26-cv-00363-TLT

### Produce and consume messages

From your SSH session, run the following commands to produce and consume Kafka messages.

1. Set the bootstrap address as an environment variable.

```
export BOOTSTRAP=bootstrap.CLUSTER_ID ✎ .REGION ✎ .managedkafka.PROJECT_ID ✎ .cloud.goog:9092
```

Replace the following:

- CLUSTER_ID : the name of your cluster
- REGION : where you created the cluster
- PROJECT_ID : your project ID

For more information, see Get the bootstrap address.

2. List the topics in the cluster.

```
kafka-topics.sh --list \
  --bootstrap-server $BOOTSTRAP \
  --command-config client.properties
```

3. Write a message to a topic.

```
echo "hello world" | kafka-console-producer.sh \
  --topic KAFKA_TOPIC_NAME ✎ \
```

[90]

108.     As another example, Google offers Kafka Connect as part of its Managed Kafka Service. Google's Kafka Service servers provide the outgoing message from Kafka Connect to a layer of the protocol stack used with Kafka:

---

[90] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 64 -                    Case No. 3:26-cv-00363-TLT

109.  The Kafka stack includes at least adapter, messaging, and transport layers (TCP for transport):

---

[91] https://docs.cloud.google.com/managed-service-for-apache-kafka/docs/kafka-connect-overview

[92] https://kafka.apache.org/protocol

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 65 -          Case No. 3:26-cv-00363-TLT

110.    The outgoing message is destined for an application on a destination node, for example, an application running in the Kafka broker:

111.    Google's Pub/Sub performs the step of providing, by the computing device, the outgoing message from an application to a layer of the protocol stack, the outgoing message is destined for an application on a destination node:

---

[93] https://docs.cloud.google.com/managed-service-for-apache-kafka/docs/brokers

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 66 -                    Case No. 3:26-cv-00363-TLT

**Figure 2** *A message flows from a publisher client to a subscriber client through Pub/Sub.* [94]

**["selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer;"]**

112.    Google's Kafka Service performs the step of selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer.

113.    For example, Google's Kafka Service allows configuration of message headers including context information such as the topic. Kafka will then append the context information to the outgoing message:

---

[94] https://docs.cloud.google.com/pubsub/docs/publish-message-overview

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 67 -                    Case No. 3:26-cv-00363-TLT



Produce and consume messages

From your SSH session, run the following commands to produce and consume Kafka messages.

1. Set the bootstrap address as an environment variable.

```
export BOOTSTRAP=bootstrap.CLUSTER_ID.REGION.managedkafka.PROJECT_ID.cloud.goog:9092
```

Replace the following:

- CLUSTER_ID: the name of your cluster
- REGION: where you created the cluster
- PROJECT_ID: your project ID

For more information, see Get the bootstrap address.

2. List the topics in the cluster.

```
kafka-topics.sh --list \
  --bootstrap-server $BOOTSTRAP \
  --command-config client.properties
```

3. Write a message to a topic.

```
echo "hello world" | kafka-console-producer.sh \
  --topic KAFKA_TOPIC_NAME \
```

[95]

114.   Additionally, Kafka uses a particular request function to select and obtain different context information (e.g., partition index) depending on the particular request, as shown below:

```
Produce API (Key: 0):

Requests:

Produce Request (Version: 3) => transactional_id acks timeout_ms [topic_data]
  transactional_id => NULLABLE_STRING
  acks => INT16
  timeout_ms => INT32
  topic_data => name [partition_data]
    name => STRING
    partition_data => index records
      index => INT32
      records => RECORDS
```

**Request header version:** 1

| FIELD | DESCRIPTION |
|---|---|
| transactional_id | The transactional ID, or null if the producer is not transactional. |
| acks | The number of acknowledgments the producer requires the leader to have received before considering a request complete. Allowed values: 0 for no acknowledgments, 1 for only the leader and -1 for the full ISR. |
| timeout_ms | The timeout to await a response in milliseconds. |
| topic_data | Each topic to produce to. |
| name | The topic name. |
| partition_data | Each partition to produce to. |
| index | The partition index. |
| records | The record data to be produced. |

[96]

---

[95] https://docs.cloud.google.com/managed-service-for-apache-kafka/docs/quickstart

[96] https://kafka.apache.org/42/design/protocol/#the-messages

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT          - 68 -          Case No. 3:26-cv-00363-TLT

97

115.    As another example, Kafka Connect determines that a message should be directed to a Kafka Service Cluster and modified for use with the Kafka protocol, and thereby selectively indicates to the layer of the stack that context information is to be obtained for that layer.

116.    For example, Kafka Connect allows configuration and modification of message headers including context information such as the topic:

98

[97] https://kafka.apache.org/42/design/protocol/#the-messages

[98] https://kafka.apache.org/42/kafka-connect/user-guide/

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                  - 69 -                  Case No. 3:26-cv-00363-TLT

117.    Kafka Connect also allows modification of the content of message headers (including adding, editing, and deleting headers):

Included transformations

Several widely-applicable data and routing transformations are included with Kafka Connect:

- Cast - Cast fields or the entire key or value to a specific type
- DropHeaders - Remove headers by name
- ExtractField - Extract a specific field from Struct and Map and include only this field in results
- Filter - Removes messages from all further processing. This is used with a predicate to selectively filter certain messages
- Flatten - Flatten a nested data structure
- HeaderFrom - Copy or move fields in the key or value to the record headers
- HoistField - Wrap the entire event as a single field inside a Struct or a Map
- InsertField - Add a field using either static data or record metadata
- InsertHeader - Add a header using static data
- MaskField - Replace field with valid null value for the type (0, empty string, etc) or custom replacement (non-empty string or numeric value only)
- RegexRouter - modify the topic of a record based on original topic, replacement string and a regular expression
- ReplaceField - Filter or rename fields
- SetSchemaMetadata - modify the schema name or version
- TimestampConverter - Convert timestamps between different formats
- TimestampRouter - Modify the topic of a record based on original topic and timestamp. Useful when using a sink that needs to write to different tables or indexes based on timestamps
- ValueToKey - Replace the record key with a new key formed from a subset of fields in the record value

[99]

118.    Google Pub/Sub also performs the step of selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer. As one non-limiting example, Google Pub/Sub does this through the use of SMTs, which are optional. If SMTs are enabled for a topic, Pub/Sub selectively indicates to a layer of the stack that context information is to be obtained for that layer:

---

[99] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                     - 70 -                     Case No. 3:26-cv-00363-TLT

Home > Documentation > Data analytics > Pub/Sub > Guides

Was this helpful? 👍 👎

# Single Message Transforms (SMTs) overview 🔖 ▾

Send feedback

Most streaming data pipelines require data transformations. Some users prefer transforming data after it reaches its destination in an extract, load, transform (ELT) pipeline, while others opt for transforming data before its ingestion in an extract, transform, and load (ETL) pipeline. Traditionally, this architecture required complex pipelines with tools like Dataflow or Apache Flink to perform data transformations.

Pub/Sub offers **Single Message Transforms** (SMTs) to simplify data transformations for streaming pipelines. SMTs enable lightweight modifications to message data and attributes directly within Pub/Sub. SMTs eliminate the need for additional data processing steps or separate data transformation products.

When an SMT is run, it takes the Pub/Sub message as input, including the message data and attributes. The output is a transformed Pub/Sub message, with modifications to the data or attributes. SMTs are integrated into the Pub/Sub API, so you can manage them as part of your topic or subscription configurations.

100

You can use Pub/Sub SMTs to make data transformations such as the following:

- Remove personally identifiable information (PII), such as full names and addresses, to protect customer privacy.

- Retain only recommendation-relevant events, such as product views and purchases, and discard others, such as customer profile changes.

- Ensure all timestamps, currency values, and product IDs adhere to a consistent format and type compatible with the recommendation system.

- Generate new data fields from raw data, such as shopping cart total value or product page dwell time.

- Add inferences from Vertex AI models to event data, such as classifications, predictions, sentiments, or embeddings.

101

## Topic

A topic resource.

| Fields | |
| --- | --- |
| name | string<br>Required. Identifier. Name of the topic. Format is `projects/{project}/topics/{topic}`. |

102

---

[100] https://docs.cloud.google.com/pubsub/docs/smts/smts-overview

[101] *Id.*

[102] https://docs.cloud.google.com/pubsub/docs/reference/rpc/google.pubsub.v1#topic

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 71 -                    Case No. 3:26-cv-00363-TLT

**["obtaining, by the computing device, context information in accordance with the indication;"]**

119.   Google's Kafka Service performs the step of obtaining, by the computing device, context information in accordance with the indication.

120.   For example, as explained above, Kafka obtains context information (e.g., topic name, partition index) in accordance with the indication. One example of that is shown below:

103

121.   Google's Pub/Sub performs the step of obtaining, by the computing device, context information in accordance with the indication. For example, as explained above, when it is selectively indicated that context information is to be obtained, a SMT will obtain the context information and append it to the message:

---

[103] https://kafka.apache.org/42/design/protocol/#the-messages

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT              - 72 -              Case No. 3:26-cv-00363-TLT

Sample message flow for SMTs

The image shows an example Pub/Sub system with SMTs applied at both the topic and subscription levels.

Figure 1 How messages are transformed with SMTs.

[104]

JavaScriptUDF

User-defined JavaScript function that can transform or filter a Pub/Sub message.

| Fields | |
|---|---|
| function_name | string<br>Required. Name of the JavaScript function that should applied to Pub/Sub messages. |
| code | string<br>Required. JavaScript code that contains a function function_name with the below signature: |

```
/**
 * Transforms a Pub/Sub message.
 *
 * @return {(Object<string, (string | Object<string, string>)>|null)} - To
 * filter a message, return `null`. To transform a message return a map
 * with the following keys:
 *   - (required) 'data' : {string}
 *   - (optional) 'attributes' : {Object<string, string>}
 * Returning empty `attributes` will remove all attributes from the
 * message.
 *
 * @param  {(Object<string, (string | Object<string, string>)>} Pub/Sub
 * message. Keys:
 *   - (required) 'data' : {string}
 *   - (required) 'attributes' : {Object<string, string>}
 *
 * @param  {Object<string, any>} metadata - Pub/Sub message metadata.
 * Keys:
 *   - (optional) 'message_id'  : {string}
 *   - (optional) 'publish_time': {string} YYYY-MM-DDTHH:MM:SSZ format
 *   - (optional) 'ordering_key': {string}
 */

function <function_name>(message, metadata) {
}
```

[105]

---

[104] https://docs.cloud.google.com/pubsub/docs/smts/smts-overview

[105] https://docs.cloud.google.com/pubsub/docs/reference/rpc/google.pubsub.v1#google.pubsub.v1.JavaScriptUDF

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT              - 73 -              Case No. 3:26-cv-00363-TLT

**[“and adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information.”]**

122. Google's Kafka Service performs the step of adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information.

123. For example, as explained above, Google's Kafka Service appends the context information (e.g., topic name and partition index) to the outgoing message. A response received from the destination node (e.g., the Kafka broker) contains the obtained context information. The below is an example of both the request and response information:

**Request header version: 2**

| FIELD | DESCRIPTION |
| --- | --- |
| transactional_id | The transactional ID, or null if the producer is not transactional. |
| acks | The number of acknowledgments the producer requires the leader to have received before considering a request complete. Allowed values: 0 for no acknowledgments, 1 for only the leader and -1 for the full ISR. |
| timeout_ms | The timeout to await a response in milliseconds. |
| topic_data | Each topic to produce to. |
| name | The topic name. |
| partition_data | Each partition to produce to. |
| index | The partition index. |
| records | The record data to be produced. |

```
Produce Request (Version: 10) => transactional_id acks timeout_ms [topic_data]
  transactional_id => COMPACT_NULLABLE_STRING
  acks => INT16
  timeout_ms => INT32
  topic_data => name [partition_data]
    name => COMPACT_STRING
    partition_data => index records
      index => INT32
      records => COMPACT_RECORDS
```

[106]

---

[106] https://kafka.apache.org/protocol

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                - 74 -                Case No. 3:26-cv-00363-TLT

| FIELD | DESCRIPTION |
| --- | --- |
| responses | Each produce response. |
| name | The topic name. |
| partition_responses | Each partition that we produced to within the topic. |
| index | The partition index. |
| error_code | The error code, or 0 if there was no error. |
| base_offset | The base offset. |
| log_append_time_ms | The timestamp returned by broker after appending the messages. If CreateTime is used for the topic, the timestamp will be -1. If LogAppendTime is used for the topic, the timestamp will be the broker local time when the messages are appended. |
| log_start_offset | The log start offset. |
| record_errors | The batch indices of records that caused the batch to be dropped. |
| batch_index | The batch index of the record that caused the batch to be dropped. |
| batch_index_error_message | The error message of the record that caused the batch to be dropped. |
| error_message | The global error message summarizing the common root cause of the records that caused the batch to be dropped. |
| throttle_time_ms | The duration in milliseconds for which the request was throttled due to a quota violation, or zero if the request did not violate any quota. |

```
Produce Response (Version: 10) => [responses] throttle_time_ms [node_endpoints]<tag: 0>
  responses => name [partition_responses]
    name => COMPACT_STRING
    partition_responses => index error_code base_offset log_append_time_ms log_start_offset [record_errors] error_message current_leader<tag: 0>
      index => INT32
      error_code => INT16
      base_offset => INT64
      log_append_time_ms => INT64
      log_start_offset => INT64
      record_errors => batch_index batch_index_error_message
        batch_index => INT32
        batch_index_error_message => COMPACT_NULLABLE_STRING
      error_message => COMPACT_NULLABLE_STRING
      current_leader<tag: 0> => leader_id leader_epoch
        leader_id => INT32
        leader_epoch => INT32
  throttle_time_ms => INT32
  node_endpoints<tag: 0> => node_id host port rack
    node_id => INT32
    host => COMPACT_STRING
    port => INT32
    rack => COMPACT_NULLABLE_STRING
```
[107]

124.    Google's Pub/Sub also performs the step of adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information. As explained above, Pub/Sub appends the obtained context information to the outgoing message. The response to the message contains the obtained context information, as seen below:

---

[107] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                    - 75 -                    Case No. 3:26-cv-00363-TLT



[108]

[109]

[108] https://docs.cloud.google.com/pubsub/docs/smts/smts-overview

[109] https://docs.cloud.google.com/pubsub/docs/reference/rpc/google.pubsub.v1#google.pubsub.v1.PubsubMessage

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT             - 76 -             Case No. 3:26-cv-00363-TLT

**PubsubMessage**

A message that is published by publishers and consumed by subscribers. The message must contain either a non-empty data field or at least one attribute. Note that client libraries represent this object differently depending on the language. See the corresponding client library documentation for more information. See quotas and limits for more information about message limits.

**Fields**

| | |
|---|---|
| data | bytes |
| | Optional. The message data field. If this field is empty, the message must contain at least one attribute. |
| attributes | map<string, string> |
| | Optional. Attributes for this message. If this field is empty, the message must contain non-empty data. This can be used to filter messages on the subscription. |
| message_id | string |
| | ID of this message, assigned by the server when the message is published. Guaranteed to be unique within the topic. This value may be read by a subscriber that receives a PubsubMessage via a Pull call or a push delivery. It must not be populated by the publisher in a Publish call. |
| publish_time | Timestamp |
| | The time at which the message was published, populated by the server when it receives the Publish call. It must not be populated by the publisher in a Publish call. |
| ordering_key | string |
| | Optional. If non-empty, identifies related messages for which publish order should be respected. If a Subscription has enable_message_ordering set to true, messages published with the same non-empty ordering_key value will be delivered to subscribers in the order in which they are received by the Pub/Sub system. All PubsubMessages published in a given PublishRequest must specify the same ordering_key value. For more information, see ordering messages. |

[110]

125.    Google is also inducing infringement of the '738 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail in the United States, or to import the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail in or from the United States, without license or authority from Defendants, with

---

[110] *Id.*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                        - 77 -                        Case No. 3:26-cv-00363-TLT

knowledge of or willful blindness to the fact that Google's actions will induce others to directly infringe the '738 Patent. Google actively encourages, directs, and controls third parties, including its end users, to make and/or use the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail in an infringing manner, including through Google's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Google has intentionally aided and encouraged third parties, including its end users, to use the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail in the United States in a manner that it knows would infringe or have a high probability of infringing the '738 Patent, with the specific intent that those performing the acts infringe the '738 Patent.

126. Google is contributorily infringing the '738 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail for use in infringing the '738 Patent, constituting a material part of the invention, knowing the Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail to be especially made or especially adapted for use in infringing the '738 Patent. The Kafka Service and/or Pub/Sub Service and/or Products using these Services such as Google Ads, Search, and Gmail are not staple articles or commodities of commerce suitable for substantial non-infringing use.

127. As a result of Google's infringement of the '738 Patent, Defendants have been damaged. In addition, Google's infringing acts and practices have caused and are causing immediate and irreparable harm to Defendants. Defendants are entitled to recover for damages sustained as a

result of Google's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

128. Defendants are further informed, and on this basis allege, that Google's infringement of the '738 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Defendants pursuant to 35 U.S.C. §§ 284-285. As noted above, Google has had knowledge of the '738 Patent and its infringement thereof, including through its awareness of Defendants' action against SAP America for its use of Apache Kafka, *Valtrus Innovations Ltd. v. SAP America, Inc.*, No. 2:24-cv-00021 (E.D. Tex. Jan. 15, 2024), and yet Google has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Defendants' patent rights.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants request that the relief sought by Google is denied, and pray for judgment against Google as follows:

A.    That Google has infringed each of the Asserted Patents;

B.    That Google has willfully infringed one or more of the Asserted Patents;

C.    That Google pay Defendants damages adequate to compensate Defendants for Google's past infringement of each of the Asserted Patents, together with interests and costs under 35 U.S.C. § 284;

D.    That Google be ordered to pay pre-judgment and post-judgment interest to Defendants on the damages assessed;

E.    That Google pay enhanced damages to Defendants pursuant to 35 U.S.C. § 284;

F.    That Google pay supplemental damages to Defendants, including interest, with accounting, as needed;

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                         - 79 -                    Case No. 3:26-cv-00363-TLT

G. That this is an exceptional case under 35 U.S.C. § 285 and that Google pay Defendants' attorneys' fees and costs in this action; and

H. That Defendants be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants hereby demand a trial by jury on all issues triable to a jury.

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT                      - 80 -                      Case No. 3:26-cv-00363-TLT

Dated: April 16, 2026

Respectfully submitted,

By:  /s/ *Jason G. Sheasby*

Jason G. Sheasby (SBN 205455)
jsheasby@irell.com
Andrew Strabone (SBN 301659)
astrabone@irell.com
Lucas S. Oxenford (SBN 328152)
loxenford@irell.com
Steven Marshack (SBN 364249)
smarshack@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

Anthony Q. Rowles (SBN 301209)
trowles@irell.com
IRELL & MANELLA LLP
840 Newport Center Dr #400
Newport Beach, CA 92660
949-760-0991

*Counsel for Defendants*
*Valtrus Innovations Limited and Key Patent*
*Innovations Limited*

DEFENDANTS' ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT    - 81 -    Case No. 3:26-cv-00363-TLT